## Whitmore & Arnold, Inc., d/b/a/ Purcellville Feed & Fertilizer

### v.

## France Theunissen Lucquet, a/k/a France Theunissen, and Bruno Lucquet

Record No. 840043

March 6, 1987

Present: All the Justices

*Daniel D. Smith* for appellant.

*Valerie P. Morrison (H. Jason Gold; Smith & Gold*, on brief), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

The question presented in this appeal is whether, under the provisions of Article Nine of the Uniform Commercial Code (U.C.C.), a financing statement signed by a debtor can add collateral not specifically described in an underlying security agreement.

The facts are undisputed. France and Bruno Lucquet (the Lucquets or debtors) purchased fertilizer and other goods from Whitmore & Arnold, Inc. (Whitmore). The purchases were financed by two loans from Farmers & Merchants National Bank of Hamilton (the Bank), aggregating $27,460.60 and evidenced by two promissory notes dated September 20, 1982, and October 18,

1982. Each note constituted a security agreement. The Lucquets were the makers and Whitmore was the endorser on the notes.

One note gave the Bank a security interest in a soybean crop; the other created a security interest in a corn crop. Additionally, each note contained the following:

*Security Agreement.* In addition to any other security interest that may be granted herein, or in any other documents which may be executed from time to time, Makers and Endorsers hereby grant a security interest to the holder of this note, its successors and assigns. Said security interest shall entitle the holder of this note to exercise all rights of a secured creditor according to Article 9 of the Uniform Commercial Code in effect in Virginia, and as may be amended from time to time. The collateral subject to this agreement is more particularly described on the front of this note, but may also be described and supplemented by other security agreements or financing statements executed by the Makers and/or Endorsers of this note. Proceeds and after-acquired property are also covered and secured by this Agreement.

On November 29, 1982, Whitmore filed a financing statement that was signed by the debtors. The financing statement covered specific farm equipment[1] and a "1983 wheat crop — located at Belmont Plantation — approx. 84 acres — off of Route 7." The financing statement named the Lucquets as "debtors" and Whitmore as both "secured party" and "assignee of secured party."

When the debtors defaulted on the notes, Whitmore, as endorser, paid the balance on the debt ($19,186.15) to the Bank. The Bank then assigned the notes and security agreements to Whitmore. Thereafter, Whitmore brought the present detinue action for seizure of the farm equipment and wheat crop[2] to satisfy the debt.

The trial court granted judgment for the debtors, ruling that Whitmore did not have a security interest in the subject property. The court opined that the financing statement did not add collateral to the underlying security agreements because the financing

---

[1] One item of farm machinery, a seed drill, is not the subject of this appeal.

[2] The Lucquets sold the wheat crop for $3,322.18. The purchaser, upon receiving Whitmore's notice of claim, made its check jointly payable to the debtors and Whitmore. The check is in the possession of the debtors' attorney.

statement failed to comply with the requirements of Code § 8.9-402[3] by omitting (a) the name and address of the Bank as the secured party, and (b) the name of the record owner of the real estate upon which the wheat crop was grown. Whitmore appeals.

■ Generally, two documents are required to create a perfected security interest in a debtor's collateral. First, a *security agreement* must give a creditor an interest in the collateral. Code § 8.9-203(1)(a) requires that a security agreement be embodied in a writing that contains the debtor's signature and a description of the collateral. The requisites of Code § 8.9-203(1)(a) serve an evidentiary function by requiring a signed agreement and obviate any Statute of Frauds problems between the debtor and creditor by requiring a writing.

■ The second document required to create a perfected security interest is a *financing statement*, a writing filed for public record. It serves the purpose of giving notice to third parties that a security interest is claimed in the debtor's collateral. The requisites of a financing statement are set forth in Code § 8.9-402(1).

■ The trial court rejected Whitmore's claim of a security interest in the collateral described in the financing statement, concluding that the financing statement did not comply with the requirements of Code § 8.9-402(1). The present case, however, involves only a debtor-creditor relationship and the *creation* of a security interest, not third-party claims or the *perfection* of a security interest. Thus, we conclude that the deficiencies in the financing statement noted by the trial court are immaterial to the question presented in this appeal.

■ The dispositive question is whether, as between the parties, the financing statement can supplement the underlying security agreements by adding other collateral. To answer this question,

---

[3] Code § 8.9-402, in pertinent part, provides:

(1) A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers . . . crops growing or to be grown or goods which are or are to become fixtures, the statement must also contain a description of the real estate concerned and the name of the record owner . . . . A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by the debtor.

we need not look beyond the security agreements themselves. They provide that "[t]he collateral subject to this agreement . . . may also be . . . supplemented by . . . financing statements executed by the Makers . . . of this note."

Ordinarily, *sui juris* persons are free to contract as they wish with respect to their property rights, and a court will not annul their agreement unless it is contrary to law. *See Moore* v. *Gregory*, 146 Va. 504, 523, 131 S.E. 692, 697 (1925). We find nothing in the U.C.C. that prohibits parties from contracting to supplement a security agreement with a separate document adding other collateral.

Here, the parties executed security agreements providing that the collateral described therein could be supplemented, *i.e.*, added to, by financing statements signed by the debtors. The Lucquets signed the financing statement that added the subject collateral. We conclude, therefore, that the financing statement, coupled with the security agreements, furnishes a sufficient description of the collateral, *see* Code § 8.9-110, and meets the requirements of Code § 8.9-203(1)(a).[4]

Thus, we hold that Whitmore had a security interest in the farm equipment and the wheat crop. Additionally, under the terms of the security agreement and Code § 8.9-203(3), Whitmore's security interest in the wheat crop extends to the proceeds from the crop's sale.

Accordingly, we will reverse the judgment and remand the case to the trial court. On remand, the trial court shall order the seizure of the farm equipment and direct the debtors to pay the proceeds of the sale of the 1983 wheat crop.

*Reversed and remanded.*

---

[4] Some courts have employed the "composite document" theory of security agreements, which permits a finding of a security agreement through various loan documents. *See, e.g., In re Bollinger Corp.*, 614 F.2d 924 (3d Cir. 1980) (permitting a creditor to assert a secured claim against a debtor when no formal security agreement was ever signed, but where various documents executed in connection with the loan evinced an intent to create a security interest). *But see, e.g., Shelton* v. *Erwin*, 472 F.2d 1118 (8th Cir. 1973) (finding a bill of sale and a title application inadequate to satisfy the requirements of the U.C.C. necessary to render the security interest enforceable against third parties, although the parties clearly intended to create a security interest). In the "composite document" cases we have examined, unlike the present case, there was neither a formally executed security agreement nor a contract provision permitting the use of a separate document to add other collateral.