NORTHWEST ACCEPTANCE CORPO-
RATION, Plaintiff–Appellee,

v.

LYNNWOOD EQUIPMENT, INC., Indus-
trial Equipment Leasing, Inc., James
Bride and Linnie Bride, Defendants–
Appellants,

and

CIT Corporation, a New York
Corporation, et al.,
Defendants,

and

Peoples National Bank of Washington,
a National Banking Association,
Intervenor.

No. 87–3541.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 1987.

Decided March 4, 1988.

Stuart M. Brown, Tonkon, Torp, Galen, Marmaduke & Booth, Portland, Or., for plaintiff-appellee.

John H. Strasburger, Short & Cressman, Seattle, Wash., for defendants-appellants.

### ORDER GRANTING PETITION FOR REHEARING AND WITHDRAWING OPINION

The panel has voted to grant Northwest's petition for rehearing. The opinion issued December 16, 1987, is withdrawn.

Before GOODWIN, ALARCON and LEAVY, Circuit Judges.

ALARCON, Circuit Judge:

Defendants-appellants Lynnwood Equipment, Inc. (Lynnwood), Industrial Equipment Leasing, Inc. (IEL), James Bride and Linnie Bride (hereinafter collectively referred to as appellants) appeal from the judgment in favor of plaintiff-appellee Northwest Acceptance Corporation (Northwest) following the granting of partial summary judgment and the ruling at the first phase of the bench trial that the agreements between the parties were enforceable. The judgment did not dispose of all the issues presented in the case, but the district court directed that a final judgment be entered concerning the partial summary judgment and the issues decided in the first phase of the trial under 28 U.S.C. § 1291 (1982). This is a diversity action in which the substantive law of Washington is applicable. We affirm.

### I.

### A.

Appellants contend that the district court erred in concluding that the 1974 Inventory Loan and Security Agreement granted Northwest a blanket security interest. Appellants argue the 1974 Inventory Loan and Security Agreement must be read together with the financing statement which limits Northwest's security interest to the equipment described in specific trust receipts. This argument is without merit.

 The district court granted Northwest summary judgment on this issue. We review *de novo* an order granting summary judgment. *Barona Group of the Capitan Grande Band of Mission Indians v. American Management & Amusement, Inc.*, 824 F.2d 710, 717 (9th Cir.1987). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986). " '[I]n contract cases, summary judgment is appropriate only if the contract or the contract provision in question is unambiguous.' " *National Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir.1983) (quoting *Castaneda v. Dura–Vent Corp.*, 648 F.2d 612, 619 (9th Cir.1981)).

The 1974 Inventory Loan and Security Agreement gave Northwest a security in-

terest in the following collateral: "All inventory of Borrower (wherever located), whether now owned or hereafter acquired, of the following general description or type: [¶] Miscellaneous new and used construction and logging equipment." The description of collateral in the financing statement is more limited; it only covered "all new and used inventory and equipment evidenced by Trust Receipt held by secured party."

Although Washington law is applicable, the parties have not cited, and our research has not disclosed, any Washington cases interpreting Washington's version of the Uniform Commercial Code (UCC) on this issue. Since Washington's version of the UCC is virtually identical to that adopted by other states, we must look for guidance to cases from jurisdictions that have interpreted related provisions of the UCC.

 A security agreement and a financing statement have different functions under the UCC. *Thorp Commercial Corp. v. Northgate Indus., Inc.*, 654 F.2d 1245, 1248 (8th Cir.1981); *see also* J. White & R. Summers Uniform Commercial Code § 23–3, at 910 (2d ed. 1980) (hereinafter *White & Summers*). In *Thorp*, the Eighth Circuit explained the distinction between a security agreement and a financing statement as follows:

> The security agreement defines what the collateral is so that, if necessary, the creditor can identify and claim it, and the debtor or other interested parties can limit the creditor's rights in the collateral given as security. The security agreement must therefore describe the collateral.... The financing statement, on the other hand, serves the purpose of putting subsequent creditors on notice that the debtor's property is encumbered. *The description of collateral in the financing statement does not function to identify the collateral and define property which the creditor may claim, but rather to warn other subsequent creditors of the prior interest.* The financing statement, which limits the prior creditor's rights vis-a-vis subsequent credi-

tors, must therefore contain a description only of the type of collateral.

654 F.2d at 1248–49 (citations omitted) (emphasis added). The court in *In re I.A. Durbin, Inc.*, 46 B.R. 595 (Bankr.S.D.Fla. 1985) addressed the legal effect of a description of the collateral in a financing statement that is more limited than the description of collateral in the security agreement:

> A financing statement, if more limited in scope than the security agreement which it perfects, limits the collateral in which the creditor has a perfected interest to that description *as against third party creditors and a trustee in bankruptcy.* The purpose of a financing statement is to give notice of the type of collateral that may be subject to a security interest and that purpose is subverted if a third party cannot reasonably ascertain from the financing statement the type of collateral as distinguished from the particular items of collateral which may be subject to a particular security interest.

*Id.* at 600–01 (citations omitted) (emphasis added) (quoting *Matter of Door Supply Center, Inc.*, 3 B.R. 103, 105 (Bankr.D.Idaho 1980)). Legal commentators have also acknowledged the important distinction between the purposes of these two documents:

> One should first compare the objective written description requirement in 9–203 [for security agreements] to the analogous requirement (for financing statements) in 9–402. The two requirements are intended to perform different functions and they pose different interpretive questions. The primary function of 9–203 is that of a statute of frauds; it is designed mainly to minimize disputes over whether there was an agreement and over what collateral it could have covered. The primary function of the description in 9–402 is to put third parties on notice.

*White & Summers, supra*, § 23–3, at 910.

In the instant case, the district court, relying solely on the language of the security agreement and financing statement, and not on extrinsic evidence, concluded that

"Northwest's loans to LEI [Lynnwood] were secured by all of LEI's logging and construction equipment inventory" and were not limited by the description of the collateral in the financing statement. The court noted that "Northwest's perfected interest governing its priority interest as to third parties, however, covered only inventory evidenced by a Trust Receipt and proceeds of that inventory."

We agree with the district court's analysis. The description of collateral in the security agreement defines the extent of the security interest; the description of collateral in the financing statement only serves to warn subsequent third party creditors of the prior interest. The district court did not err when it concluded the security agreement, and not the financing statement, defined the extent of the security interest.

The three cases appellants rely upon are inapposite. In *Whitmore & Arnold, Inc. v. Lucquet,* 233 Va. 106, 353 S.E.2d 764 (1987), the contract expressly provided that the description of the collateral would be found in the financing statement. 353 S.E.2d at 766–67. The contract in the instant matter does not contain a comparable provision.

In *In re Permian Anchor Servs., Inc.,* 649 F.2d 763 (10th Cir.1981), the financing statement contained a broader list of collateral than did the security agreement. *Id.* at 765. The Tenth Circuit held that the limited description of collateral in the security agreement defined the boundaries of the security interests. *Id.* at 765–66.

*Georgia–Pacific Corp. v. Lumber Prods. Co.,* 590 P.2d 661 (Okla.1979), is distinguishable because the issue presented to that court concerned the extent and priority of the *perfected* security interest in the collateral among various creditors. *Id.* at 664. The Oklahoma court was not confronted with the issue now before us.

## B.

■ Appellants also assert that if the testimony is "read as a whole," the evidence establishes that the 1980 amendments to the 1974 Inventory Loan and Security Agreement and financing statement were obtained by fraud or misrepresentation. This claim is not supported by the record.

The district court resolved the issue of fraud after a bench trial. The district court's findings of fact on this issue are subject to the clearly erroneous standard of review. *McCulloch v. Albert E. Price, Inc.,* 823 F.2d 316, 318 (9th Cir.1987). Under this standard, the appellate court must accept the lower court's findings of fact unless upon review the court is left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

■ Appellants argue that Bray, vice-president of Northwest, assured Bride that the amendment to the 1980 security agreement did not create a blanket security interest. Bray denied making any such representation. The district court found "no intent to mislead on the part of Bray." Additionally, the district court concluded that "Northwest did not intentionally mislead Bride or encourage his misunderstanding of the creation of a blanket security interest in 1980." The district court's finding that no fraud or misrepresentation occurred is not clearly erroneous.

## C.

■ Appellants next contend the district court erred in concluding that Lynnwood's counterclaim for fraud based on the 1980 amendments to the 1974 Inventory Loan and Security Agreement and financing statement is barred by the statute of limitations. Appellants claim that under Fed. R.Civ.P. 15(c), their fraud counterclaim, although filed more than three years after they became aware of the underlying facts, *see* Wash.Rev.Code Ann. § 4.16.080 (1962), relates back to the date of the original pleadings and therefore is not time barred. Appellants' counterclaim for fraud is identical to their defense of fraud. The district court found there was no evidence of fraud. As discussed above, the district court's finding that there was no evidence

of fraud was not clearly erroneous. Because appellants failed to persuade the trial court by a preponderance of evidence that fraud was committed by Northwest, we need not decide whether it was error to preclude appellants from presenting this issue as a counterclaim.

## II.

### A.

■ Appellants argue that the district court's finding that Northwest complied with the April 22, 1982 Settlement Agreement by providing the required accounting was clearly erroneous. We disagree.

The Settlement Agreement contains the following requirement for an accounting:

NAC shall provide to LEI [Lynnwood], IEL and Brides an accounting on a unit-by-unit basis as to the source and application of all proceeds to the accounts of such persons or entities pertaining to equipment identified in Exhibits 2, 4, 6, 8 and 10.

Evidence on this issue was presented to the district court. After considering the proof presented at trial, the district court rejected appellants' contention that Northwest had failed to provide the required accounting. The district court found as follows:

Evidence at trial proved that Northwest complied with the spirit and intent of this requirement. A full accounting was provided at the time the agreement was signed. Northwest responded to each inquiry from defendants as to the accounts covered, and there were few changes because LEI apparently made only one sale and less than $100,000 was credited to defendant's ... account from the sale of additional equipment. At the conclusion of the agreement period, Northwest again provided a full accounting. [¶] Thus the Court concludes that there has been no breach of the April 22, 1982 settlement agreement.

The district court's finding is supported by the testimony of witnesses called by Northwest. For example, John O'Phelen testified he helped prepare the initial accounting, delivered it to Robert Bride, and then spent one or two days going over it with Bride. The district court resolved the disputed testimony relating to accounting in favor of Northwest. The court's finding that Northwest complied with the accounting provision in the Settlement Agreement was not clearly erroneous.

### B.

■ In their opening brief, appellants claim that Northwest breached the Settlement Agreement by interfering with Lynnwood's right to sell equipment. Appellants failed to present an intelligible argument in support of this contention. Instead, appellants devoted two pages of their brief to testimony which does not appear related to their contention. The reply brief is equally unintelligible on this issue.

Appellants' failure to present intelligible argument on this claim violates Fed.R.App. P. 28(a)(4). Rule 28(a)(4) provides that the appellant's brief *"shall* contain the contentions of the appellant with respect to the issues presented, and the reasons therefor...."* (Emphasis added). Because of appellants' failure to comply with Rule 28(a)(4), we deem their argument waived. *United States v. White,* 454 F.2d 435, 439 (7th Cir.1971) (it is particularly appropriate to deem an argument waived for failure to comply with Fed.R.App.P. 28(a)(4) where the court has "not been presented with sufficient information or argument to allow an intelligent disposition of ... [the] issue"), *cert. denied,* 406 U.S. 962, 92 S.Ct. 2070, 32 L.Ed.2d 350 (1972).

### III.

Appellants argue the Brides were entitled to notice of the sales of collateral. They contend that Northwest's failure to provide that notice invalidates the deficiency judgment entered against the Brides. This claim lacks merit.

■ Under well-established Washington law, the failure to provide the Brides with notice does not bar the deficiency judgment against them. *Swanson v. May,* 40 Wash. App. 148, 697 P.2d 1013, 1017 (1985) ("[f]ailure to give reasonable notification of a

proposed disposition does not automatically bar the secured party from recovering a deficiency judgment"); *Merchants Leasing Co. v. Clark*, 14 Wash.App. 317, 540 P.2d 922, 926 (1975) ("failure to give notice . . . [does] not invalidate the deficiency judgment itself"); *accord Rotta v. Early Indus. Corp.*, 47 Wash.App. 21, 733 P.2d 576, 578–79 (1987); *Commercial Credit Corp. v. Wollgast*, 11 Wash.App. 117, 521 P.2d 1191, 1194–96 (1974); *Grant County Tractor Co. v. Nuss*, 6 Wash.App. 866, 496 P.2d 966, 969 (1972); *but see Walter Implement, Inc. v. Focht*, 42 Wash.App. 104, 709 P.2d 1215, 1221 (1985) (in dictum, failure to give notice bars a deficiency judgment), *aff'd on other grounds*, 107 Wash.2d 553, 730 P.2d 1340, 1342 (1987).

### IV.

#### A.

■ Appellants also claim that the district court erred in dismissing their fifth counterclaim. Appellants have failed to identify the basis for their contention in either their opening or reply brief. In their opening brief, appellants assert that the district court erred in dismissing the fifth counterclaim. They then proceed to discuss the legitimacy of the dismissal of the ninth counterclaim. In the reply brief, appellants attack Northwest's argument supporting the dismissal of their fifth counterclaim. Appellants have failed to disclose why *they* believe the dismissal was erroneous.

We deem this contention waived because of appellants' failure to present sufficient argument in their opening brief. Fed.R. App.P. 28(a)(4); *see United States v. John Bernard Indus., Inc.*, 589 F.2d 1353, 1362 n. 5 (8th Cir.1979).

#### B.

■ Appellants claim the district court erred in dismissing their ninth counterclaim. Appellants alleged that Northwest "intentionally interfered" with their right under the April 22, 1982 settlement agreement to sell certain items of equipment. However, under Washington law, North-

west cannot as a matter of law tortiously interfere with a contract to which it is a party. *See Houser v. City of Redmond*, 91 Wash.2d 36, 586 P.2d 482, 484 (1978); *Calbom v. Knudtzon*, 65 Wash.2d 157, 396 P.2d 148, 150 (1964). Accordingly, the district court did not err in dismissing the ninth-counterclaim.

### V.

#### A.

■ Appellants next contend that in 1983 Northwest novated contracts without Lynnwood's, the guarantor of these accounts, consent. Lynnwood claims it should not have been assessed liability for these novated contracts. This claim is meritless.

Appellants attempt to avoid liability by claiming the contracts were novated. A party must plead as an affirmative defense "any . . . matter constituting an avoidance. . . ." Fed.R.Civ.P. 8(c). "A pretrial order has the effect of amending the pleadings," *ACORN v. City of Phoenix*, 798 F.2d 1260, 1263 (9th Cir.1986), and " 'controls the subsequent course of action in the litigation.' " *Id.* at 1272 (quoting *Eagle v. Am. Tel. & Tel. Co.*, 769 F.2d 541, 548 (9th Cir.1985), *cert. denied*, 475 U.S. 1084, 106 S.Ct. 1465, 89 L.Ed.2d 721 (1986)). Novation was not raised in the pretrial order or prior to trial. Thus, the defense was waived.

Appellants did not raise the defense of novation until they filed their reply brief in this court. It is well established in this circuit that " '[t]he general rule is that appellants cannot raise a new issue for the first time in their reply briefs.' " *United States v. Birtle*, 792 F.2d 846, 848 (9th Cir.1986) (quoting *Thompson v. Commissioner*, 631 F.2d 642, 649 (9th Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981)). We decline to review this untimely contention.

#### B.

■ Appellants contend the district court erred in calculating damages. Appel-

lants argue that its recourse liability should be calculated on the original Sales and Repurchase Agreement, and not on the novated contracts. We disagree.

The district court held:

Northwest's modification of customer contracts is valid where it merely extended the *period* for repayment. Modifications which increased interest or assessed penalties are invalid unless specifically consented to by LEI. LEI remains liable for the underlying recourse obligation.

(Emphasis in original). The twenty-five accounts on which appellants focus involve contracts that have been modified with appellants' approval. Thus, under the district court's holding, which appellants do not challenge, any account, such as the accounts under consideration, containing a modification consented to by Lynnwood were accounts that did not have to be calculated with reference to the underlying recourse obligation. Appellants' claim of error necessarily fails.

C.

 Appellants next contend that Lynnwood's recourse liability on assigned leases should have been calculated on the simple interest method found in paragraph five of the 1974 Sales and Repurchase Agreement, and not based on the default damage provision in the leases. We disagree.

We have reviewed paragraph five of the 1974 Sales and Repurchase Agreement. We find no mention of interest, let alone the calculation of simple interest.

D.

 Lynnwood leased equipment covered by the Boyd W. Gray (Gray) account to Friend & Rikalo (F & R). The lease provided that F & R could cancel the lease without further liability by returning the leased equipment. The agreement between Northwest and Lynnwood provided that Lynnwood would receive credit on the Gray account under the April 22 Settlement Agreement only if F & R did not return the equipment within six months, but not oth-

erwise. F & R returned the equipment within six months.

The district court concluded that based on the agreements between Northwest and Lynnwood, (1) Lynnwood was not entitled to receive credit for the F & R lease, and (2) Lynnwood, as guarantor, was liable for the balance of the lease which would otherwise have been owed by F & R. Appellants contend that Lynnwood was not liable for the balance of the lease as guarantor because "the guarantee itself only requires LEI to pay 'payments promptly when due,'" and no payments were due since F & R had no obligation to make payments after it returned the equipment. This claim is unmeritorious.

Under the relevant guaranty agreement, Lynnwood promised to pay Northwest

the payments promptly when due of the amount of each and every installment payable under that certain lease agreement between Northwest ... and Friend & Rikalo, Inc. ... in the amount of $655,-500.00 and the payment on demand of the entire unpaid balance at the date of default in the event of any default by the lessee under the sale lease above-referred to.

After F & R returned the equipment to Lynnwood, Northwest sued F & R on its entire obligation under the lease. Northwest recovered a substantial amount of money from F & R. Lynnwood was given full credit for the amounts recovered. Appellants' argument that F & R did not default is not supported by the facts presented to the district court.

E.

 Appellants contend Lynnwood was entitled to credit on the Hanson account for the S & H lease of equipment. The district court concluded that since appellants did not raise this issue until their motion for reconsideration, it would not address the question. The district court reasoned that consideration of this issue in a post-trial proceeding would be unfair because Northwest had "been afforded no opportunity to refute ... [the] contention" at trial. Appellants concede this issue was

not raised in their pleadings or in the pre-trial order.

We review a district court's refusal to consider an untimely argument for abuse of discretion. *ACORN*, 798 F.2d at 1272. The district court did not abuse its discretion in refusing to consider appellants' belated argument. The district court correctly noted that it would have been unfair to Northwest to address this issue without prior notice or the opportunity to present evidence at trial to rebut the new factual allegations.

### F.

Appellants contend the district court erred in holding that Lynnwood was collaterally estopped from litigating the "commercial reasonableness" of the sale of equipment Northwest seized from Johnson Brothers Logging. The district court's ruling that appellants were collaterally estopped is subject to *de novo* review by this court. *Plaine v. McCabe*, 797 F.2d 713, 718 (9th Cir.1986) ("[t]he availability of collateral estoppel is a mixed question of law and fact which we review *de novo*"); *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1519 (9th Cir.1985).

Northwest seized and sold equipment Lynnwood had leased to Johnson Brothers after the lessees defaulted on a note. Lynnwood had assigned the note to Northwest. After the sale, Northwest sued Johnson Brothers and received a judicial determination that the sale was "commercially reasonable." While Lynnwood was not a party to this litigation, its owner, James Bride, was called as a witness by Johnson Brothers at trial.

Appellants claim that Northwest cannot rely on the doctrine of collateral estoppel because Lynnwood was not a party in the prior litigation nor does the record show it was in privity with Johnson Brothers. The district court concluded that, while Lynnwood was not a party to the Johnson Brothers' litigation, it "and ... [Johnson Brothers] had common interests in the equipment subject to the prior litigation; the same issues were before the Court; de-fendants received notice and had an opportunity to participate."

In this diversity case, Washington law on collateral estoppel controls. *St. Paul Fire & Marine Ins. Co. v. Weiner*, 606 F.2d 864, 868 (9th Cir.1979). *See Huang Tang v. Aetna Life Ins. Co.*, 523 F.2d 811, 813 (9th Cir.1975). In Washington, application of collateral estoppel generally requires that "the party against whom the plea is asserted ... [was] a party to or in privity with a party to the prior adjudication." *Malland v. State Dept. of Retirement Systems*, 103 Wash.2d 484, 694 P.2d 16, 21 (1985). However, "there is an exception to ... [this] requirement." *Hackler v. Hackler*, 37 Wash.App. 791, 683 P.2d 241, 243 (1984). "One who was a witness in an action, fully acquainted with its character and object and interested in its results, is estopped by the judgment as fully as if he had been a party." *Id.*

Bride's presence as a witness at the Johnson Brothers trial enabled Lynnwood to become "fully acquainted" with the litigation. It is uncontroverted Lynnwood was interested in the results of that trial. Thus, the district court did not err in ruling that Lynnwood was collaterally estopped from relitigating the commercial reasonableness issue in this action.

### G.

Appellants contend that the district court erred in concluding Northwest was not required to prove its sales of the collateral securing the leases satisfied the requirements of Wash.Rev.Code Ann. § 62A.9–504(1) (Supp.1987). We disagree.

Under Washington law, liquidated damages provisions "displace[ ] the applicability" of section 62A.9–504(1). *Northwest Acceptance Corp. v. Hesco Constr., Inc.*, 26 Wash.App. 823, 614 P.2d 1302, 1305 (1980). The leases in the matter before us contain liquidated damages provisions. Thus, the district court correctly concluded appellants could not challenge the sale of the collateral under section 62A.9–504(1).

## VI.

■ Northwest requests this court to award sanctions against appellants for filing a frivolous or "bad faith" appeal. We consider an appeal frivolous when an appellant's arguments of error are "wholly without merit." *Wellman v. Int'l Union of Operating Eng'rs*, 812 F.2d 1204, 1206 (9th Cir.1987); *Taylor v. Sentry Life Ins. Co.*, 729 F.2d 652, 656 (9th Cir.1984) (per curiam). We do not consider all of Lynnwood's arguments wholly without merit and thus decline to impose sanctions.

## VII.

The judgment is AFFIRMED. Costs and attorney's fees are awarded to Northwest.