## CIRCUIT COURT OF WASHINGTON COUNTY

Nina R. Moore, etc.

v.

First Virginia Bank-Damascus

May 19, 1989

Case No. (Chancery) 89-53

By JUDGE CHARLES H. SMITH, JR.

I have reviewed the file in this matter, including all pleadings and exhibits and have considered same in light of argument of counsel made herein on April 28, 1989. I have likewise considered authorities cited by counsel along with others noted herein. This matter was argued before the court upon a stipulation of the facts, and it would appear that no material facts are genuinely in dispute. Thus, it would appear that this matter is mature and proper for a decision on the motion for summary judgment filed herein.

The plaintiff, Nina R. Moore, is the mother of Zane Lesley Moore. Zane Lesley Moore departed this life testate on July 5, 1988. In his will, he devised and bequeathed all of his property to his mother. On August 30, 1988, Mrs. Moore qualified as administratrix, c.t.a., of the estate of her son. Mrs. Moore has brought this chancery cause individually and as administratrix of said estate.

Mrs. Moore and her decedent son were formerly engaged in the excavation and construction equipment business in Washington County, Virginia. Their banking business was conducted with the defendant. On December 31, 1986, the plaintiff and her decedent son borrowed the sum of $7,000.00 from the defendant for the purchase of a piece of equipment. Both the plaintiff and her decedent son

signed as makers on the installment note evidencing their joint obligation to the defendant. This installment note is in the nature of a security agreement in that it grants unto the defendant a security interest in one 1976 John Deere Dozer Model 450C. A financing statement covering this equipment was duly filed by the defendant in the clerk's office of this court on January 6, 1987. On January 25, 1989, the plaintiff and her decedent son paid this obligation in full to the defendant and by letter dated January 25, 1989, requested the defendant to release the financing statement on the collateral by filing a termination statement.

On May 26, 1988, the decedent, Zane Lesley Moore, borrowed the sum of $2,504.29 from the defendant. The same installment note form provided by the defendant was executed as evidence of this indebtedness with the decedent as sole maker. This note was unpaid on the date of Zane Lesley Moore's death and remains unpaid. In the body of this note form, there is a section headed up in bold black type "SECURITY INTEREST." Beneath that there is a block to check and a space provided for describing any collateral. On this note the block is not checked, and no collateral is inserted. Also on these notes, under the same heading, there is another block to check with the notation beside the block "property securing other loans with you may also secure this loan." These forms appear to be preprinted with a "X" inserted in these blocks. At least this is the way they appear on the two notes in question.

The plaintiff contends that this second note is unsecured by virtue of the fact that there is no collateral described in it and no financing statement filed with regard thereto. The plaintiff, ad administratrix, concedes that this second note has not been paid, but she is treating it as an unsecured debt of the estate, and since the estate has several secured debts to pay, she contends that to give preferential treatment to this unsecured debt would be in violation of her fiduciary duty as well as the provisions of § 64.1-157 of the Code.

The defendant concedes that the first note has been paid in full and that they have declined to file the required termination statement with regard thereto. The defendant treats this second note as secured and contends that it is justified in doing so by virtue of the pre-

checked block on the installment note form referred to above.

The plaintiff is requesting that this court order the defendant to discharge the lien and file the requisite termination statement with regard to the collateral in question; that she be awarded court costs and attorney fees; that she be awarded the $100.00 provided by Section 8.9-404(1) of the Code and other general damages.

The issue, of course, is whether the pre-checked block on this note form constitutes a security agreement thereby creating a security interest in the collateral described in the first note upon which the financing statement was duly filed and perfected. I believe this issue can be resolved by close scrutiny of the "four corners" of the notes in question in conjunction with the applicable provisions of the Uniform Commercial Code.

The applicable provisions of the UCC are those dealing with secured transactions, § 8.9-101, et seq. of the Code. The policy statement of this title, § 8.9-102, indicates that the title applies to:

> (a) to any transaction . . . which is intended to create a security interest in personal property . . .

Section 8.9-105 defines security agreement as:

> an agreement which creates or provides for a security interest.

Section 8.1-201(37) defines security interest as:

> an interest in personal property or fixtures which secures payment or performance of an obligation.

Three requirements must be met in order for a security interest to attach and be enforceable against the debtor or third persons. They are:

> (a)  The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement

> which contains a description of the collateral
> . . . and (b) and value has been given; and
> (c) the debtor has rights in the collateral.
> (§ 8.9-203(1) of the Code.)

The Supreme Court of Virginia has had few occasions to rule upon the requisites for a security agreement or creation of a security interest since the adoption of the UCC. In the recent case of *Whitmore and Arnold, Inc. v. Lucquet*, 233 Va. 106 (1987), the Supreme Court stated:

> Generally, two documents are required to create a perfected security interest in a debtor's collateral. First, a security agreement must give a creditor an interest in the collateral. Code § 8.9-203(1)(a) requires that a security agreement be embodied in a writing that contains a debtor's signature and a description of the collateral. The requisites of Code § 8.9-203(1)(a) serve an evidentiary function by requiring a signed agreement and obviate any Statute of Frauds problems between the debtor and creditor by requiring a writing.
> The second document required to create a perfected security interest is a financing statement, a writing filed for public record. It serves the purpose of giving notice to third parties that a security interest is claimed in the debtor's collateral . . .

The instant case, as in the *Whitmore* case, involves only a debtor-creditor relationship and the *creation* of a security interest, not third-party claims or the *perfection* of a security interest. Thus, this court has no occasion to examine the financing statement.

There is no question at all that the initial promissory note was in the nature of a security agreement and did create a security interest in the collateral described therein. The question is whether the language used in the pre-checked block on that form, "property securing other loans with you may also secure this loan" operates to create a "floating lien" which attached to the second note. I believe the note is more revealing in what it

does not say than what it says. The note does not say "the property securing this note may also secure future notes or advances to you." The defendant is bound by the language which it employs on the notes that it prepares and furnishes to its borrowers. At the time this first note was executed, the only property of the makers securing other loans by the defendant was real estate owned by the plaintiff and conveyed in trust to secure a note to her decedent son. I do not think it is even contended, nor could it be successfully argued, that that real estate also secured the first note mentioned herein. To be sure, there is nothing wrong with a properly drafted security agreement which creates a security interest therein for future advances. The UCC provides for same.

> Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment . . . (§ 8.9-204(3) of the Code.)

It is noted in the official comments under that particular Code section as follows:

> Under subsection (3) collateral may secure future as well as present advances when the security agreement so provides . . . In line with the policy of this Article toward after-acquired property interests, this subsection validates the future advance interest, provided only that the obligation be covered by the security agreement.

If the collateral pledged for a specific loan could be converted into open-ended security arrangements by recitals in subsequent loans, much needless uncertainty would be introduced into modern commercial law. In order for a security agreement to cover future advances, the security agreement must clearly specify that the security interest in the collateral is meant to secure future advances. The language employed in security agreements attempting to establish a security interest for future advances are commonly referred to as "dragnet clauses" or "floating

liens." These clauses in security agreements are not generally favored but will be upheld where no ambiguity exists. If the terms are not clear or are ambiguous, the agreement must be construed most strongly against the party which prepared the agreement and thus was responsible for the existence of ambiguities. This court cannot construe that ambiguous language used in the first note so as to extend the security interest created therein to the second note.

The inquiry then becomes whether or not this same language employed in the second note operates to incorporate by reference the terms of the first note with regard to creation of a security interest. I do not believe it does. I do not believe this second note is in the nature of a security agreement. In the first place, the first block on the form under "SECURITY INTEREST" which states "I give you a security interest in . . ." is not checked. This negates any intention to form a security agreement or create a security interest. In the second place, there is obviously no collateral at all described in this note. It is true that the note secured by real estate and the note secured by the dozer were in existence at the time the note in question was executed. It cannot be contended that the real estate secures this note because it belongs to the plaintiff. It cannot be contended that the dozer secures this second note because it was owned by the plaintiff and her decedent son. The plaintiff is neither a maker nor endorser on this second note. In the case of *Northwestern Bank v. First Virginia Bank of Damascus*, 585 F. Supp. 425 (W.D. Va. 1984), the court noted:

> Generally, a debtor must have rights in property before he may create a security interest in it, and in the absence of special circumstances, a security interest attaches only to the extent of the debtor's interest.

I believe the court can take judicial knowledge of the fact that conventional lending institutions do not normally extend credit on the faith of a security interest in a one-half interest in rapidly depreciating personal property. Finally, and this may make this entire review academic, as noted above, plaintiff was not a maker or endorser on this second note. A close examination of the note will

reveal at the bottom a paragraph titled "NON-BORROWER CO-OWNERS OF SECURITY." This provision is obviously included to cover the contingency where the maker of the note/security agreement is not the owner or full owner of the collateral pledged. Plaintiff, the co-owner of the alleged security, did not sign in the space provided. This, again, negates any intention at all on the part of the defendant or plaintiff's decedent to form a security agreement or create a security interest. Had the contrary been true, it would have been a very easy matter to have the plaintiff execute this note.

For the foregoing reasons, the court would rule that the second note is unsecured and that a termination statement must be filed with regard to the first note pursuant to § 8.9-404 of the Code. Further, the defendant will be required to pay unto the plaintiff the sum of $100.00 as required by that Code section in addition to his costs and reasonable attorney's fees expended herein.

Counsel have, by agreement, submitted an additional exhibit for the Court's consideration in this matter. It is the back page of the note form in question. Counsel for the defendant specifically calls the Court's attention to the paragraph entitled "ADDITIONAL TERMS -- SECURED LOANS ONLY." The first two sentences in that section read as follows:

> I also give you a security interest in any parts or things I add to the property described on the front of this agreement. I own any property in which I have given you a security interest
> . . . .

Having reviewed this note once again, including the terms on both sides, I am of the opinion that this provision lends no support to defendant's position. In the first place, it is axiomatic that you cannot "add to" something that does not exist. As noted above, there is no collateral described on the front of the second note. In the second place, the decedent, sole maker of the note, was not the owner of the alleged collateral, the dozer. He was co-owner. As such he had no authority to sell, lease, encumber, or otherwise dispose of same without consent of his co-owner, the plaintiff.