79 F.3d 1153
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Euralis LORD-BUTCHER; Albert Ferdinand, Sr.; Griselda
Ferdinand, Karen Wendy Ferdinand; Albert Dezi
Ferdinand, Jr.; Alison Ferdinand,
Plaintiffs-Appellees,
v.
CITY OF NEWPORT BEACH; Walter Dejong; Robert Henry,
Defendants-Appellants,
and
Officer Breslin; Officer Hamilton, Officer Heinecke; Mark
Everton, Defendants.
Euralis LORD-BUTCHER; Albert Ferdinand, Sr.; Griselda
Ferdinand, Karen Wendy Ferdinand; Albert Dezi
Ferdinand, Jr.; Alison Ferdinand,
Plaintiffs-Appellees/Cross-Appellants
v.
CITY OF NEWPORT BEACH; Officer Breslin; Officer Hamilton,
Officer Heinecke; Mark Everton, Robert Henry;
Walter Dejong,
Defendants-Appellants/Cross-Appellees
 Nos. 94-55929, 94-55934.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 16, 1995.
Decided March 13, 1996.
 
 1
 Before: NOONAN and HALL, Circuit Judges, and PRO, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Defendant-appellants/Cross-appellees appeal the district court denial of their motion for judgment as a matter of law, motion for a new trial and motion for a mistrial. Plaintiff-appellees/Cross-Appellants appeal the district court's order denying their motion for judgment notwithstanding the verdict and judgment as a matter of law.
 
 
 4
 Having heard oral argument and reviewed the briefs submitted in this matter, we affirm the court order denying defendants' motions and reverse in part and affirm in part the court order denying plaintiffs' motions.
 
 I.
 
 5
 Defendants contend the district court erred in denying their motion for judgment as a matter of law because there was insufficient evidence to support the jury's verdict against defendants Robert Henry and Walter DeJong.
 
 A.
 
 6
 Plaintiff Euralis Lord-Butcher alleged that Henry violated her Fourth Amendment rights by removing her driver's license from her purse, and thus, deprived her of her constitutional rights under the color of law.
 
 
 7
 According to the testimony at trial, when Henry removed Lord-Butcher's license, he had no reason to believe she was either dangerous or a robbery suspect: at that point, all plaintiffs had been released from custody and the officers had been notified that no crime had taken place at the jewelry store. Moreover, Henry provided no testimony to substantiate his basis for reasonable suspicion. He merely stated that because Lord-Butcher was being uncooperative, he felt it would be more expedient to remove her license himself. Yet, Sergeant Heinecke testified that removing Lord-Butcher's license "was not consistent with training" and that it was "not normal procedure to take someone's purse and obtain identification." Pursuant to Michigan v. Long, 463 U.S. 1032 (1983), we hold that this second search of Lord-Butcher's car was unconstitutional.[1]
 
 
 8
 Thus, viewing the testimony in the light most favorable to the plaintiffs, we find there was substantial evidence to support the jury's finding that defendant Henry conducted an unreasonable search and seizure.
 
 B.
 
 9
 Defendants also contend there was insufficient evidence to support the jury's verdict against Officer DeJong. DeJong maintains his actions were consistent with Newport Beach Police Department guidelines that allow officers in a felony stop to cuff, search and place suspects in a prone or kneeling position. Other officers also testified that they did not see DeJong use unnecessary or negligent force during the felony stop.
 
 
 10
 Not surprisingly, the plaintiffs' version of events differs substantially from defendants'. Both Griselda and Albert Ferdinand testified that DeJong used unnecessary force in arresting them: According to Griselda, DeJong yanked her purse from her neck, patted down her breasts for weapons, forced her to kneel and removed the handcuffs in a manner that caused her pain. Albert's testimony revealed that DeJong had kicked Albert's legs, pushed him to the ground, left him kneeling despite his complaints of pain, and as a result of DeJong's actions, Albert fell forward and broke his dentures. Finally, both plaintiffs averred that they suffer from lingering physical and emotional pain. Griselda attested to back pain and fear of going out alone or being near the police. Albert and his family members testified that he has become reclusive, agitated, and slightly obsessive about this incident.
 
 
 11
 Although there is a conflict in testimony, we view the evidence in the light most favorable to plaintiffs, who are the non-moving party. Because substantial evidence supports the verdict, we affirm the district court's decision to deny defendants' motion for judgment as a matter of law
 
 II.
 
 12
 Following closing argument, defendants made a Rule 50 motion contending that they were entitled to raise a qualified immunity defense. Defendants, however, failed to include the qualified immunity defense in their pretrial order. Their reference in the pretrial order to a prior pleading that included the defense does not vitiate the error because a pretrial order supersedes all prior pleadings. United States v. First Nat'l Bank of Circle, 652 F.2d 882, 886 (9th Cir.1981); Northwest Acceptance Corp. v. Lynnwood Equipment, Inc., 841 F.2d 918, 924 (9th Cir.1988) (failure to raise defense in pretrial order constitutes waiver).
 
 
 13
 Furthermore, prior to trial, defendants made no attempt to amend the order to include the issue of qualified immunity. This circuit has held that the issue of qualified immunity is "preliminary" in nature and should be resolved at the earliest stage of litigation. Act Up!/Portland v. Bagley, 988 F.2d 868, 872 (9th Cir.1993). With the exercise of appropriate diligence, the qualified immunity issue could have easily been raised in a pretrial motion to dismiss or motion for summary judgment. Yet, the first time defendants raised the issue was at a motions hearing held after both sides had rested their case.
 
 
 14
 Given defendants' omission of the qualified immunity from the pretrial order and their failure to raise the issue in a timely fashion, we find the district court did not abuse its discretion by ruling defendants had waived the issue.
 
 III.
 
 15
 Defendants contend that the district court erred in denying their motion for a new trial because the verdict against defendants DeJong and Henry was contrary to law and the weight of evidence, and because the jury award was excessive.
 
 A.
 
 16
 As noted above, there was sufficient evidence for the jury to determine that Henry's search of Lord-Butcher's purse violated her Fourth Amendment rights. Furthermore, there was sufficient evidence to find that DeJong's arrest of Griselda and Albert constituted negligence. Therefore, we hold the district court did not abuse its discretion in denying defendants' motion for a new trial.
 
 B.
 
 17
 Defendants argue that, because neither Lord-Butcher's person nor property were physically injured by Henry's search, the jury's award of $15,000 was excessive. They contend the amount of the award "will not serve to compensate her; it will merely punish the City of Newport Beach which is required to pay the verdict."
 
 
 18
 First, as noted in the prior discussion, there was ample evidence for the jury to conclude that Henry's search violated Lord-Butcher's Fourth Amendment rights. Second, contrary to defendants' contention, monetary damages are appropriate compensation for a constitutional violation. See 42 U.S.C. § 1983. Third and finally, the jury was not informed that the City of Newport Beach would indemnify Officer Henry. Nothing in the verdict form indicates the officer-defendants were to be indemnified nor did counsel argue the point before the jury. Therefore, because there was sufficient evidence to support the verdict and because it is not "grossly excessive," we affirm the jury's verdict in favor of Lord-Butcher. Chalmers v. City of Los Angeles, 762 F.2d 753, 760 (9th Cir.1985).
 
 
 19
 We also affirm the jury's award to Griselda and Albert Ferdinand. Defendants argue that plaintiffs' damages were not commensurate to the amount of money awarded them. They point to the fact that plaintiffs offered no expert testimony to substantiate their claim of physical and emotional damage. This circuit has affirmed jury awards on even slighter evidence that was not substantiated by expert testimony. See DeNieva v. Reyes, 966 F.2d 480, 487 (9th Cir.1992) (affirming award of $50,000 to plaintiff who experienced anxiety, insomnia, dizziness and vomiting during eleven-day period when her passport was confiscated).
 
 
 20
 Here, the jury heard eleven days' worth of testimony and argument which revealed that both Griselda and Albert Ferdinand sustained physical and emotional damage as a result of DeJong's actions. The jurors had an opportunity to weigh the credibility of the witnesses and together, they fashioned an award which they deemed appropriate.[2] Because the verdict is supported by the evidence and is not "monstrous," "grossly excessive" or "shocking to the conscience," we affirm the award of damages to Griselda and Albert Ferdinand.
 
 IV.
 
 21
 Defendants contend the district court committed prejudicial error by failing to grant a mistrial following an emotional outburst by one of the plaintiffs, Albert Ferdinand. During plaintiffs' closing argument, Albert burst into tears and left the courtroom. However, his sobs could still be heard in the courtroom. At that point, defense counsel called for a sidebar and requested a mistrial.
 
 
 22
 The court denied the motion for mistrial, and instead gave a curative jury instruction. Specifically, the court admonished the jury:
 
 
 23
 not to consider at all in any fashion any emotional responses by any side in this case, any individual plaintiff, any individual defendant. That should have no bearing on your decision in this case. To the extent that you may have observed anything to that effect, you are ordered to disregard it.
 
 
 24
 The court also instructed Albert to remain outside of the courtroom unless he could avoid further emotional outbursts.
 
 
 25
 Misconduct by a party requires reversal if the misconduct sufficiently permeates the "entire proceeding to provide conviction that the jury was influenced by passion and prejudiced in reaching its verdict." Glover v. Bic Corp., 987 F.2d 1410, 1421 (9th Cir.1993) (referring to attorney misconduct). "In this context, the trial court is in a far better position to gauge the prejudicial effect of improper comments than an appellate court which reviews only the cold record." Id.
 
 
 26
 Nothing in the record suggests that Albert's reaction so permeated the proceeding that it influenced or prejudiced the jury. As a precautionary measure, the court specifically gave a curative instruction admonishing the jury to ignore the emotional outbursts of any and all parties. Accordingly, we find it was not an abuse of discretion for the court to deny the motion for mistrial.
 
 V.
 
 27
 Defendants contend the district court abused its discretion in awarding attorney's fees to plaintiffs' counsel.
 
 
 28
 Here, the only plaintiff to succeed on a civil rights claim was Lord-Butcher who was awarded $15,000 based on defendant Henry's violation of 42 U.S.C. § 1983. Defendants do not dispute that pursuant to Hensley v. Eckerhart, 461 U.S. 424, 433 (1982), Lord-Butcher is a prevailing party within the meaning of 42 U.S.C. § 1988. However, they object to the total fees awarded because they contend the fees are not reasonable.
 
 
 29
 Initially, plaintiff's counsel sought compensation for 621.9 hours, which amounted to $145,495.00 in attorney's fees. After reviewing counsel's billing statement, the court determined that counsel was attempting to receive compensation for work related to the other unsuccessful claims. The court specifically disallowed recompense for work which had "no conceivable relationship to the one successful § 1983 claim." Accordingly, counsel's billable hours statement was reduced to 333.8 hours. The court then determined that $200.00 per hour was the prevailing market rate and arrived at a total award figure of $69,312.19, a figure which included $66,760.00 in attorney's fees and $2,552.19 in out-of-pocket expenses.
 
 
 30
 We find the district court's award comported with Hensley and this circuit's ruling in Gates v. Deukmeijian, 987 F.2d 1392, 1397 (9th Cir.1992) (holding that a reasonable fee equals "the number of hours reasonably expended multiplied by a reasonable hourly rate"). Given the strong and favorable presumption that the lodestar represents a reasonable fee, Gates, 987 F.2d at 1397, and the significant discretion accorded the district court in authorizing attorney's fees, we affirm the district court's award of attorney's fees to plaintiff's counsel.
 
 VI.
 
 31
 Plaintiffs contend the district court erred in denying their motion for judgment as a matter of law and their judgment notwithstanding the verdict because there was sufficient evidence to demonstrate that they had been unreasonably detained, arrested without probable cause and subjected to excessive force by defendants.
 
 A.
 
 32
 We find that the officers lacked reasonable suspicion to initiate an investigatory stop in this case because the officers had no knowledge that plaintiffs had committed or were about to commit a crime. United States v. Hall, 974 F.2d 1201, 1204 (9th Cir.1992) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)).
 
 
 33
 According to the record, the officers received the following radio call:
 
 
 34
 Suspicious circumstances--possible casing at Charles Barr Jewelers 1803 Westcliff. Reporting party states two male Blacks just walked into the business; were looking at jewelry and then walked out. They got into a red, possibly an Acura. They're trying to get the plate now. It's now leaving the parking lot on Westcliff headed towards Dover.
 
 
 35
 Although defendants have consistently referred to plaintiffs as "robbery" suspects, the radio call does not indicate that any crime had taken place. "Possible casing" and "robbery" are not fungible terms. The latter is a crime, the former is not. Thus, without more information, the radio call alone provided inadequate justification for initiating a stop.
 
 
 36
 Defendants maintain that their belief that the car was stolen justified an investigatory stop. However, as the record demonstrates, officers misread the license plate and thus were operating with erroneous information. Thus, viewing the totality of the circumstances, we find defendants lacked reasonable suspicion to justify their investigatory stop of plaintiffs' car and that plaintiffs' detention was unreasonable. Accordingly, we reverse the district court's denial of plaintiffs' motions for judgment notwithstanding the verdict and judgment as a matter of law.
 
 B.
 
 37
 Plaintiffs also argue they were arrested without probable cause. We agree. Although the use of force does not automatically convert an investigatory stop into an arrest, Allen v. City of Los Angeles, No. 94-55560, slip op. at 12063 (9th Cir. Sept. 25, 1995), we find this particular incident ripened to the level of an arrest. There is no dispute that officers ordered plaintiffs to exit their car at gunpoint, searched them, handcuffed them, and commanded them to kneel on the sidewalk. Plaintiffs testified that they believed they were not free to leave the scene and defendants conceded that plaintiffs were fully cooperative and made no attempt to either flee the scene or evade arrest. Under the circumstances presented here, we find that the officers' level of suspicion did not justify the extent of restraints placed upon plaintiffs. Thus, viewing the totality of the circumstances we find that plaintiffs were placed under arrest. Allen v. City of Portland, No. 93-35212, slip op. 15701, 15708 (9th Cir. Dec. 19, 1995); United States v. Del Vizo, 918 F.2d 821, 824 (9th Cir.1990).
 
 
 38
 We next turn to the question of whether officers had probable cause for the arrest. "Probable cause exists when the police know reasonably trustworthy information sufficient to warrant a prudent person in to believing that the accused had committed or was committing an offense." Del Vizo, 918 F.2d at 825.
 
 
 39
 At the time of plaintiffs' arrest, police knew that a reliable source had reported "two black men" driving a "red Acura" had "possibly" cased the jewelry store. Police had no further physical description of the suspects such as their age, height or clothing, and, as noted above, they had no reason to believe that plaintiffs had committed or were about to commit an offense.
 
 
 40
 Moreover, nothing in plaintiffs' conduct or appearance led officers to believe that plaintiffs might have or were about to commit a crime: they did not attempt to evade arrest or flee the scene; they did not act suspiciously; they fully complied and cooperated with the officers' commands; they appeared well-dressed to the officers; and finally, according to Sergeant Heinecke, the disparity in ages among plaintiffs further indicated that they were not typical robbery suspects.
 
 
 41
 It would seem the primary reason plaintiffs were stopped was not because they were acting suspiciously or fit a suspect profile, but because they were black and they were driving an Acura. This is not sufficient information to warrant a finding of probable cause. Accordingly, we find substantial evidence did not support the belief that officers had probable cause to arrest plaintiffs. Therefore, we reverse the district court's denial of plaintiffs' motions for judgment as matter of law and judgment notwithstanding the verdict as to this issue.
 
 C.
 
 42
 Plaintiffs contend that defendants used excessive force and were negligent in their efforts to arrest plaintiffs.
 
 1.
 
 43
 Claims against police officers for use of excessive force are analyzed under the Fourth Amendment's "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 396 (1989). To determine reasonableness, the court must first "assess the quantum of force used." Chew v. Gates, 27 F.3d 1431, 1440 (9th Cir.1994), cert. denied 115 S.Ct. 1097 (1995) (citing Graham, 490 U.S. at 386). Second, the court must weigh the three factors articulated by the Supreme Court in Graham: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. Id. at 386.
 
 
 44
 Here, testimony revealed that the officers' use of force was consistent with Newport Beach Police Department guidelines. According to those guidelines, during a felony stop officers should search a suspect by patting him down or pulling his clothing tight to the body. Officers should then handcuff the suspect and have him lie prone or kneel on the ground until the situation is contained. Although this procedure might seem excessive to someone who was innocent, as were plaintiffs, it is considered normal for a felony stop.
 
 
 45
 It is also evident from the testimony that plaintiffs posed no immediate threat to the officers safety, that no crime had been committed and that none of the plaintiffs resisted arrest or attempted to flee. However, even though some factors favor plaintiffs and others favor the defense, the court must view the evidence in a light most favorable to defendants. This issue, more than others, is one better suited to the provenance of the jury. Chew, 27 F.3d at 1431. The jury here had an opportunity to weigh both sides of the story and although it is possible to draw "two inconsistent conclusions" from this evidence, it is enough to support the jury's conclusion that the police did not use excessive force against plaintiffs. George v. City of Long Beach, 973 F.2d 706, 709 (9th Cir.1992), cert. denied, 113 S.Ct. 1269 (1993).
 
 
 46
 Accordingly, because the amount of force used by the officers was consistent with the guidelines for a felony stop, we affirm the district court's denial of plaintiffs' motion as to this particular issue.
 
 2.
 
 47
 Of the four remaining plaintiffs, only Lord-Butcher testified to experiencing physical injuries as a result of her detention. She claimed defendant DeJong pushed her head forward and roughly grabbed her arms when cuffing them and that as a result of his action, she suffers from chronic neck and back pain. Her medical expert testified that this pain was chronic and severe and is consistent with being roughly handcuffed. However, there was also testimony that since the July 1991 incident with police, Lord-Butcher was involved in two car accidents. In the first accident, Lord-Butcher sustained a mild cervical sprain, and abdominal and chest contusions and, in the second accident, she claimed she suffered no injuries. Defendants presented medical testimony that Lord-Butcher's chronic back pain could also have been caused by the first car accident.
 
 
 48
 Viewing the testimony in a light most favorable to defendants, there was substantial evidence for the jury to conclude that Lord-Butcher's injuries were not proximately caused by DeJong's actions. Accordingly, the court was proper in denying her motion for judgment as a matter of law.
 
 
 49
 As to the Ferdinand children, none of the three testified to any lingering physical or emotional trauma as a result of the felony stop. Therefore, we find substantial evidence supported the jury's findings that the officers were not negligent and we affirm the district court's order denying plaintiffs' motions as to this issue.
 
 VII.
 
 50
 Because plaintiffs have prevailed in defendants' appeal of the jury verdict against Officer Henry, we award plaintiffs' counsel attorney's fees pursuant to 42 U.S.C. § 1988. We also award fees for work expended on plaintiffs' appeal in regards to the unreasonable investigatory stop and arrest without probable cause. We do not award attorney's fees for any work related to the plaintiffs' claim for use of excessive force or negligence. Finally, we deny defense counsel's request for attorney's fees because they have not prevailed in this appeal.
 
 CONCLUSION
 
 51
 We AFFIRM the district court's decision to deny defendants' motions for (1) judgment as a matter of law, (2) new trial and (3) mistrial. We also AFFIRM the district court's denial of plaintiffs' motion for judgment notwithstanding the verdict and judgment as a matter of law as to their claims for negligent and/or excessive use of force.
 
 
 52
 As to plaintiffs' claim regarding their detention and arrest, we find plaintiffs were detained without reasonable suspicion and that they were arrested without probable cause. Accordingly, we REVERSE the district court's denial of plaintiffs' motions for judgment as a matter of law and judgment notwithstanding the verdict as to those two claims. This matter is remanded back to the district court for proceedings consistent with this panel's findings and for a determination of attorney's fees.
 
 
 
 *
 Hon. Phillip M. Pro, United States District Judge for the District of Nevada, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Furthermore, we find defendants' contention that the purpose of Henry's search was to comply with Vehicle Code § 12951(b) unpersuasive. Both Officers Henry and Hamilton testified that plaintiffs were not being stopped for a vehicle code violation. At trial, even defense counsel argued the code section was "irrelevant" because "there [was] no stop based on the vehicle code."
 
 
 [2]
 Due to some confusion about the verdict form, the judge requested that the jury deliberate further to clarify its verdict as to Officer DeJong. The jury reconvened and sent out a note that read "defendant DeJong, by his actions of putting Albert Ferdinand, Sr. and Griselda on their knees, specifically caused damages to these two as we interpret [the jury instructions on negligence]. Without further instructions we stay with our verdict." The jury then returned with a unanimous verdict granting Griselda $25,000 and Albert $75,000