In re **VIENNA PARK PROPERTIES,** a limited partnership, Debtor.

**VIENNA PARK PROPERTIES,** a limited partnership, Appellant and Plaintiff–Cross–Appellee,

v.

**UNITED POSTAL SAVINGS ASSOCIATION,** Resolution Trust Corporation, as conservator for Trustbank Savings, F.S.B., Appellees and Defendants–Cross–Appellants.

Nos. 1639, 1952, Dockets 92–5014, 92–5022.

United States Court of Appeals, Second Circuit.

Argued June 18, 1992.

Decided Sept. 29, 1992.

Before: MESKILL, Chief Judge, KEARSE and MINER, Circuit Judges.

MESKILL, Chief Judge:

This is an appeal and cross-appeal from a decision of the United States District Court for the Southern District of New York, Sand, J., *In re Vienna Park Properties*, 136 B.R. 43 (S.D.N.Y.1992). The district court affirmed one decision of the United States Bankruptcy Court for the Southern District of New York, Blackshear, *J.*, which held that a creditor's security interest in the debtor's interest in an escrow account was not properly perfected under Virginia law and thus was voidable by the bankrupt estate. *In re Vienna Park Properties*, 135 B.R. 739 (Bkrtcy.S.D.N.Y.1991). The district court reversed another of that court's decisions which held that rents were not cash collateral under section 363 of the Bankruptcy Code. *In re Vienna Park Properties*, 120 B.R. 332 (Bkrtcy. S.D.N.Y.1990). Both aspects of this appeal involve the appropriate treatment of particular assets of a bankrupt estate in which certain creditors claim security interests. For the reasons that follow, we affirm the judgment of the district court.

## BACKGROUND

In 1984, the debtor in this bankruptcy case, Vienna Park Properties (Vienna Park), a limited partnership, purchased 300 condominium units (the Properties) located in Vienna, Virginia. Congressional Mortgage Corporation (Congressional) loaned Vienna Park the bulk of the money for the purchase. Congressional secured repayment of this loan by obtaining a Deed of Trust to each of the 300 condominium units. All 300 Deeds of Trust were recorded in the county in which the Properties are located. Each Deed of Trust contains a clause assigning to Congressional the rents of the Properties as additional security for the loan.

Vienna Park financed a portion of the remaining purchase price through the seller of the condominiums, Vienna Park Associates (VPA). To secure this second loan, Vienna Park granted VPA 300 second

James D. Glass, New York City (Martin P. Unger, Andrew B. Eckstein, John P. Bevilacqua, Glen D. Rubin, Daniel Hume, Tenzer, Greenblatt, Fallon & Kaplan, of counsel), for appellant.

Robert Lewin, New York City (Fred Hodara, Mary Ann Berger, Alan Z. Yudkowsky, Stroock & Stroock & Lavan, of counsel), for appellees.

Deeds of Trust, each subordinate to Deeds of Trust granted Congressional for each unit.

Vienna Park and VPA also established an escrow fund (the Escrow Fund) that initially contained $2.5 million, $500,000 of which was contributed by Vienna Park. The remainder of the funds was drawn from the money that Congressional loaned to Vienna Park. The Escrow Account was held by a bank during the period of the VPA/Vienna Park loan and was to be used to manage the properties by a management agent designated by VPA. Thus, VPA effectively retained management control of the Properties during the period of the loan. The management agent was empowered to borrow money for the Escrow Fund if the fund were to become depleted. The management agent was also allowed to pledge the assets of the Escrow Account as collateral.

Upon satisfaction of Vienna Park's obligations to VPA, the escrow agreement was to terminate, and Vienna Park had the right to receive any funds that then remained in the Escrow Account. Vienna Park assigned to Congressional this right to the residual of the Escrow Account as further collateral to secure the loan from Congressional to Vienna Park.

In due course, Congressional assigned 162 of the 300 Deeds of Trust to United Postal Savings Association (United Postal) and the remaining 138 Deeds of Trust to Trustbank Federal Savings Bank (Trustbank) (United Postal and Trustbank are collectively referred to herein as "the Banks"). Trustbank has since been declared insolvent and is represented in this proceeding by the Resolution Trust Corporation. Congressional also assigned to each bank a portion of its security interest in Vienna Park's right to the residual of the Escrow Account, roughly in proportion to the assignments of the Deeds of Trust.

Vienna Park made no payments to either United Postal or Trustbank on the notes securing the loan after July 1989. As a result, both banks notified Vienna Park in August 1989 that it was in default and that the loan would be accelerated if the default

were not cured within thirty days. United Postal accelerated its portion of the loan on September 19, 1989 and on October 30, 1989 demanded the rents of the Properties pursuant to the assignment of rents provisions in the Deeds of Trust. Trustbank similarly demanded the rents on October 30, 1989.

In late October 1989, the Banks commenced foreclosure proceedings on the Properties. On November 21, 1989, before the Banks had successfully foreclosed on the Properties, Vienna Park filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 1101 *et seq.* The foreclosure proceedings thus were automatically stayed. *See id.* § 362(a).

Vienna Park became a debtor in possession upon the commencement of bankruptcy. No trustee was appointed. As a debtor in possession Vienna Park in effect serves as a trustee and has the powers of a trustee. *See id.* §§ 1101, 1107(a). Because the relevant statutory provisions refer to the powers of a trustee, for clarity we will refer to Vienna Park as "the trustee" where appropriate rather than as a debtor in possession.

On December 29, 1989, the Banks filed a motion for sequestration in the bankruptcy court claiming that the rents, which amounted to approximately $90,000 a month, were "cash collateral" under section 363 of the Bankruptcy Code and thus were subject to special protection as set forth in that section. *Id.* § 363. The bankruptcy court initially agreed with the Banks, but later reversed itself *sua sponte*, holding that because the Banks had not, as of the commencement of the bankruptcy case, performed the steps necessary under Virginia law to enforce the security interest in the rents, those rents were not cash collateral. *See In re Vienna Park Properties*, 120 B.R. at 338.

On appeal from that decision pursuant to 28 U.S.C. § 158(a), the district court disagreed with the bankruptcy court and held that the rents were cash collateral. *In re Vienna Park Properties*, 136 B.R. at 53–55. The district court explained that the Banks held a perfected security interest in

the rents under Virginia law because they had recorded the Deeds of Trust that contained the assignment of rents provisions. Although the Banks could not enforce this right by taking possession of the property because of the bankruptcy stay, the district court held that the unenforced security interest in rents constituted cash collateral. The district court then determined that the Banks were entitled to rents from the date they filed a motion to sequester the rents. *Id.* at 55.

In a separate proceeding not directly related to the cash collateral proceeding, Vienna Park sought a determination in the bankruptcy court that the right to receive funds remaining in the Escrow Account was property of the estate not subject to the Banks' security interests. The bankruptcy court found that the collateral in that case was a "general intangible" under Virginia law and that because the Banks had failed to file a financing statement, the security interests were unperfected. *See In re Vienna Park Properties,* 135 B.R. at 744–45. On appeal, the district court agreed with the bankruptcy court. *See In re Vienna Park Properties,* 136 B.R. at 56–58. Accordingly, the trustee had the power to void those interests under section 544 of the Bankruptcy Code, 11 U.S.C. § 544, which grants bankruptcy trustees the powers of hypothetical lien creditors under non-bankruptcy law.

The Banks appeal from the district court's determination that the trustee could void their security interests in the Escrow Account. Vienna Park appeals from the district court's decision that the rents were "cash collateral" under section 363 of the Bankruptcy Code. We have appellate jurisdiction under 28 U.S.C. § 158(d). We affirm both aspects of the district court's decision.

## DISCUSSION

### I. *The Cash Collateral Appeal*

The first issue raised on appeal is whether the district court properly classified the rents arising from the Properties as "cash collateral" under section 363 of the Bankruptcy Code. Because of that classifica-tion, Vienna Park is unable to use those funds without court approval or the Banks' consent. Resolution of this issue requires a careful examination of the relevant portions of the Bankruptcy Code and relevant non-bankruptcy law.

Ordinarily, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Rents that arise from property of the estate are property of the estate. *Id.* § 541(a)(6). Therefore, under ordinary circumstances, the trustee would be free to use the rents arising from property of the estate.

If property is classified as "cash collateral," however, the powers of the trustee are more limited. "The trustee may not use, sell, or lease cash collateral ... unless—(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease." *Id.* § 363(c)(2).

"Cash collateral" is defined in section 363 as "cash ... [or] cash equivalents ... in which the estate and an entity other than the estate have an interest and includes the ... rents ... of property subject to a security interest as provided in section 552(b) of this title." *Id.* § 363(a). Rents therefore are "cash collateral" when they are "subject to a security interest as provided in section 552(b)." *Id.*

With certain exceptions, section 552(b) provides, in pertinent part:

[I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to ... rents ... of such property, then such security interest extends to such ... rents ... acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law.

*Id.* § 552(b). This section creates an exception to the general rule that property ac-

quired by the estate after the commencement of bankruptcy is not subject to any security interest arising from an agreement entered into prior to the commencement of the bankruptcy case. *See id.* § 552(a).

■ Vienna Park entered into the security agreement assigning to Congressional the rents of the Properties as security for the loan before the commencement of the case. The security interests extend to the Properties, which were acquired prior to bankruptcy, and to the rents of the Properties.[1] Therefore, under section 552(b), "such security interest extends to [the] ... rents ... acquired by the estate after the commencement of the case to the extent provided by [the] security agreement and by applicable nonbankruptcy law." *Id.* § 552(b).

The security agreements, the rent assignment clauses in the Deeds of Trust, provide that Vienna Park shall have the right to collect the rents until acceleration of the loan, which took place prior to bankruptcy. The rent assignment clauses also provide that "[a]ll rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents ... and then to the sums secured by this Deed of Trust." This condition does not affect the existence of the Banks' interest in the rents but merely directs the manner in which the rents are to be used upon collection.

■ The only question under section 552(b) in this case, therefore, is the extent to which the security interests in rents are affected by "applicable nonbankruptcy law." *Id.* Because the Properties are located in Virginia, the applicable law is Virginia law. *See Butner v. United States,*

440 U.S. 48, 51–54, 99 S.Ct. 914, 916–18, 59 L.Ed.2d 136 (1979). We turn therefore to the relevant portions of Virginia law.

■ Section 55–59 of the Code of Virginia states, in pertinent part, that "[e]very deed of trust to secure debts or indemnify sureties is in the nature of a contract and shall be construed according to its terms to the extent not in conflict with the requirements of law." Code of Va. § 55–59. Thus, under Virginia law, the status of the rents is determined primarily by reference to the language of the rent assignment clause in the Deed of Trust. The security agreement here unquestionably provides that the security interest exists in the rents arising from the Properties: "As additional security hereunder, Borrower [Vienna Park] hereby assigns to Lender [the Banks] the rents of the Property."

Vienna Park argues that the security interest is not enforceable because the Banks did not take possession of the Properties. Vienna Park points to Virginia common law in the 19th Century under which a security interest in rents could not be enforced prior to the secured party gaining possession of the property. *See, e.g., Frayser's Administrator v. R. & A. R.R. Co.,* 81 Va. 388, 391 (Va.1886); *Gibert v. Washington City, Virginia Midland and Great Southern R.R. Co.,* 74 Va. 645, 648 (Va.1881).

■ However, as the district court properly noted, the enforceability of an interest is an issue distinct from the issue whether a security interest exists under § 552(b). The failure of a secured party to perform enforcement procedures prior to bankruptcy merely renders an interest inchoate, not nullified. Under Virginia law,

---

1. The rent assignment clauses provide:

 As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

 Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take

possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

the rent assignment clauses in this case create at least an inchoate interest of the Banks in the rents.

 An agreement that creates an inchoate lien on rents creates a "security interest" under the Bankruptcy Code. A "security interest" is defined in the Bankruptcy Code as simply a "lien created by an agreement." *Id.* § 101(51). "Lien," in turn, is broadly defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." *Id.* § 101(37). This definition includes inchoate liens. *See* S.Rep. 95–989, U.S.Code Cong. & Admin.News 1978, p. 5787, *reprinted following* 11 U.S.C. § 101 ("The definition is new and is very broad.... It includes inchoate liens."). The inchoate security interests created by the rent assignment clauses in the Deeds of Trust under Virginia law are security interests under section 552(b).

 In sum, the rents are "rents ... subject to a security interest as provided in section 552(b)." 11 U.S.C. § 363(a). The Banks, each one "an entity other than the estate," *id.*, have an interest in the rents under state law and continued through bankruptcy by force of section 552(b). The rents satisfy all the conditions of "cash collateral" set forth in section 363(a). The rents thus were cash collateral from the time of the commencement of the bankruptcy case.

 An inquiry into the present enforceability of a security interest is not relevant to whether that interest exists as an initial matter. As one bankruptcy court put it:

An enforceable interest regarding an assignment of rents arises in favor of the assignee upon the creation of the security interest. The right to actual enforcement, however, is subject to the occurrence of statutory and contractual conditions precedent. While the conditions precedent might not have occurred as of filing [for bankruptcy] regarding the ... rents, that does not change the fact that the post-petition rents are subject to the [creditor]'s security interest and become its cash collateral under 11 U.S.C. § 363.

It is true that the automatic stay prevents the [creditor] from undertaking steps to enforce its rights in the cash collateral. However, it is equally true that the Debtor is prohibited from using the same cash collateral without first obtaining an order allowing the use pursuant to 11 U.S.C. § 363.

*In re Pavilion Place Associates*, 89 B.R. 36, 39 (Bkrtcy.D.Minn.1988) (applying Minnesota law regarding the creation of a security interest in rents); *see also New York Life Insurance Co. v. Bremer Towers*, 714 F.Supp. 414, 418 (D.Minn.1989) ("The fact that a creditor did not enforce that perfected interest prior to bankruptcy does not invalidate the interest, it merely stays the enforcement of that interest pending the bankruptcy court's determination of the party's entitlement to it."). *See generally* McCafferty, *The Assignment of Rents in the Crucible of Bankruptcy*, 94 Com.L.J. 433 (1989).

An inquiry into the present enforceability of a security interest in rents might be relevant to an exercise of the court's equitable discretion under the final clause of section 552(b). That clause provides that the interest in rents continues to exist after bankruptcy "except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." 11 U.S.C. § 552(b). There is a longstanding bankruptcy policy of preventing "a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" *Butner*, 440 U.S. at 55, 99 S.Ct. at 918 (quoting *Lewis v. Manufacturers Nat'l Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961)); *accord Patterson v. Shumate*, —— U.S. ——, ——, 112 S.Ct. 2242, 2249, 119 L.Ed.2d 519 (1992). In keeping with this policy, the court might well exercise its equitable powers to strip a creditor of rights to post-petition rents prior to the point at which, under applicable state law, the creditor would likely have been able to enforce those rights.

 Neither the district court nor the bankruptcy court purported to exercise

its discretion under that section. The district court properly held that "the unenforced interest in rents constitutes cash collateral." 136 B.R. at 55. Therefore, as the district court recognized, "§ 363(c)(2) prohibits the Debtor's use of those assets without the Secured Creditors' consent or court authorization. Nor may such authorization be granted once the Secured Creditors have requested protection absent a finding that their interests are adequately protected. Section 363(e)." *Id.* We agree with the district court and conclude that the rents were properly classified as cash collateral from the date of the commencement of the bankruptcy case.

The district court then addressed "from what date [the Banks] are entitled to the rental proceeds." *Id.* The district court noted that the Banks had not taken the steps necessary to enforce their security interests in the rents prior to bankruptcy and that the automatic stay of section 362 prohibited those enforcement steps after the commencement of the bankruptcy case. *Id.* The district court held, however, that "the [Banks'] Motion for Sequestration served as an appropriate 'enforcement-surrogate,' and that the [Banks] are entitled to the rents from the date they filed that motion." *Id.*

It is unclear exactly what the district court meant in stating that the Banks were "entitled" to the rents from the date of the sequestration motion. If the district court meant that the rents were only cash collateral from the date of the motion, we disagree. As we have stated above, the rents satisfy the definition of cash collateral regardless of the present enforceability of the security interest in those rents. Thus, they were cash collateral from the outset of bankruptcy.

▮▮▮▮▮▮ Alternatively, the district court's reference to the Banks' "entitlement" to the rents may refer to a right on the part of the Banks to collect directly the rents from the date of the sequestration motion. We also disagree with this proposition. As the district court noted, under Virginia law a creditor with a security interest in rents is not able to enforce that interest prior to taking possession of the property. The necessary steps for enforcement of the security interest under Virginia law were not satisfied prior to bankruptcy. Section 362 of the Bankruptcy Code prevents the Banks from taking such steps after Vienna Park filed the bankruptcy petition. 11 U.S.C. § 362. Thus the Banks are not entitled to collect the rents.

▮▮▮▮▮ Nor are the Banks aided by section 546(b) of the Bankruptcy Code, which provides that certain security interests may be perfected by notice after bankruptcy. As noted above, the security interests in the rents were properly perfected but the steps necessary to enforce those interests were not yet complete.

▮▮▮▮▮ The rents are cash collateral and the Banks' motion to sequester those rents should have been granted. The rents were cash collateral from the beginning of the bankruptcy case. Because the Banks had not yet gained the right to enforce that security interest, they are not entitled to collect the rents. Rather, the rents should be sequestered and subject to protection as cash collateral under section 363 and the terms of the rent assignment clauses. The ultimate repayment of the loan to the Banks should proceed under Chapter 11 of the Bankruptcy Code.

## II. *The Escrow Classification Appeal*

The second portion of this appeal involves the contending rights of the estate and the Banks in the funds contained in the Escrow Account. The district court held that the collateral was a "general intangible," a security interest which, under Virginia law, may only be perfected by filing a financing statement. 136 B.R. at 56–58. The Banks argue that the collateral instead was money and that the security interest was perfectible by possession. Under the district court's holding, Vienna Park is able to void the Banks' security interest in the Escrow Account.

The Escrow Account was established by Vienna Park, VPA and certain principals of VPA as a form of security for the loan from VPA to Vienna Park. The escrow

agreement directed that the funds contained in the Escrow Account be held by an escrow agent, invested at the direction of the management agent designated by VPA and used by that management agent to manage the Properties. The purpose of the Escrow Account was to pay certain operating expenses of the condominium project. On termination of the escrow agreement, the escrow agent was to disburse to Vienna Park the balance of the funds remaining in the Escrow Account.

Vienna Park and the management agent assigned to Congressional "their rights to receive funds now or hereafter deposited in the Escrow Account in accordance with the Escrow Agreement." This assignment was made "as collateral security for the full and prompt payment and performance by [Vienna Park] of its obligations under the Notes and Deeds of Trust." Congressional assigned to United Postal approximately 54 percent of "its interest in the Escrow Account ... including, but not limited to, its right to receive funds now or hereafter deposited [t]herein in accordance with the Escrow Agreement." The remaining portion of Congressional's interest in the Escrow Account was similarly assigned to Trustbank in January 1985. No financing statement was ever filed with respect to the Banks' security interest in Vienna Park's rights to the funds in the Escrow Account.

■ Under section 544 of the Bankruptcy Code, the trustee is vested with the power to void certain transfers of property, including certain transfers of security interests. *See* 11 U.S.C. § 544. Under section 544(a), the trustee

> may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

11 U.S.C. § 544(a). Because the site of the transaction was Virginia, we examine Virginia law to determine the rights of such a hypothetical lien creditor under section 544(a). *See generally* 4 *Collier on Bankruptcy* ¶ 544.02, at 544–5 through 544–6 (15th ed.) ("[T]he trustee's powers, in every case governed by section 544(a), are those which the state law would allow to a supposed or hypothetical creditor of the debtor.") (footnote omitted).

■ Because this issue involves a security interest, it is governed by Virginia's version of Article 9 of the Uniform Commercial Code (UCC). *See* Va.Code § 8.9–101 *et seq.* Section 8.9–301(1) states that "an unperfected security interest is subordinate to the rights of ... (b) a person who becomes a lien creditor before the security interest is perfected." Thus, if the trustee demonstrates that the Banks' security interest in Vienna Park's right to the escrow funds was not perfected, the trustee will be able to void that interest and Vienna Park's right to those funds will become an unencumbered part of the estate.

The steps required for perfection of a security interest under Virginia law vary depending on the nature of the collateral. Section 8.9–302(1) of the Virginia Code provides that "[a] financing statement shall be filed to perfect all security interests except" for certain security interests specifically set forth. Va.Code § 8.9–302(1).[2]

---

**2.** Va.Code § 8.9–302(1) states in full:

A financing statement shall be filed to perfect all security interests except the following:

(a) a security interest in collateral in possession of the secured party under § 8.9–305;

(b) a security interest temporarily perfected in instruments or documents without delivery under § 8.9–304 or in proceeds for a twenty-day period under § 8.9–306;

(c) a security interest created by an assignment of a beneficial interest in a trust or a decedent's estate;

(d) a purchase money security interest in consumer goods; but notation on the certificate of title is required for a motor vehicle or watercraft required to be titled; and fixture filing is required for priority over conflicting interests in fixtures to the extent provided in § 8.9–313;

The district court held that the Banks' security interest was a security interest in a general intangible, *see* Va.Code § 8.9–106, which is not one of the interests specifically excepted from Section 8.9–302(1)'s filing requirement.

■ The Banks argue that their security interest is excepted from the filing requirement of section 8.9–302 because the collateral is "a security interest in collateral *in possession* of the secured party under § 8.9–305." Va.Code § 8.9–302(1)(a). The Banks contend that the collateral in this case is not a general intangible but rather is money. A security interest in money can be perfected through possession by the secured party or an agent. *See* Va.Code § 8.9–305.[3] Possession of the funds by the escrow agent, in this case a bank, arguably satisfied the possession requirement of section 8.9–305. *See Appeal of Copeland*, 531 F.2d 1195, 1203–04 (3rd Cir.1976) (applying Delaware's version of section 9–305 of the UCC). If the collateral is properly classified as money, the Banks arguably have perfected their security interest.

■ "Money" is defined by the Virginia UCC as "a medium of exchange authorized or adopted by a domestic or foreign government as a part of its currency." Va. Code § 8.1–201(24). This general definition controls because Article 9 of the Virginia UCC does not specifically define "money." *See* Va.Code § 8.9–105(4).

■ There is no question that the funds held in the escrow account, United States dollars, are "money" within this definition. However, Vienna Park did not have an unencumbered present right to these funds at the time it granted the security interest. Rather, it merely possessed a contractual right to receive any funds remaining in the Escrow Account upon fulfillment of its obligations to VPA. The most Vienna Park could transfer at the time of the security agreement was a contingent right to receive an uncertain amount of money in the future.

A contractual right to obtain money at some future time is not the same thing as money itself. The Virginia UCC recognizes this in several of its provisions. *See, e.g.,* § 8.9–106 (defining "account" as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper"); § 8.9–105(1)(b) (defining "chattel paper" as "a writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods").

The Banks direct us to *In re O.P.M. Leasing Services, Inc.,* 46 B.R. 661 (Bkrtcy.S.D.N.Y.1985), in support of their contention that the collateral here is money. In *O.P.M.,* the debtor's predecessor in interest had entered into a lease agreement with Blue Cross and Blue Shield of New York (BCBS). Under that agreement, the debtor, under certain circumstances, would be required to make certain payments to BCBS. In order to ensure that those payments were made, the parties set up an escrow account containing $100,000 of the debtor's funds. The obligation to pay

(e) an assignment of accounts which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts of the assignor;

(f) a security interest of a collecting bank as provided under § 8.4–208 or in securities as provided in § 8.8–321, or arising under Title 8.2 to the extent provided under § 8.9–113 or covered in subsection (3) of this section;

(g) an assignment for the benefit of all the creditors of the transferor, and subsequent transfers by the assignee thereunder.

**3.** Va.Code 8.9–305 states:
A security interest in letters of credit and advices of credit as provided in paragraph (a) of subsection (2) of § 8.5–116, goods, instruments (other than certificated securities), money, negotiable documents or chattel paper may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest. A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in this title. The security interest may be otherwise perfected as provided in this title before or after the period of possession by the secured party.

arose and the debtor did not make the payment. The escrow agent, in accordance with the terms of the escrow agreement, handed over the escrow funds to BCBS. The debtor attempted to void the transfer, claiming that the collateral in that case was a "general intangible" and thus that the security interest was unperfected in the absence of filing. The bankruptcy court rejected this argument, noting that "[s]ince the escrow account is, for all intents and purposes, money, it is not a general intangible." *Id.* at 670 n. 5 (citation omitted).

This case differs from *O.P.M.* in several important respects. The escrow agreement at issue in *O.P.M.* was itself a security arrangement between the debtor and the secured creditor. The *O.P.M.* escrow agreement was the vehicle by which the collateral, money, was placed in the hands of a third party and by which BCBS's security interest was perfected under section 9–304(1) of the UCC. In contrast, the Banks in our case were not direct parties to the escrow agreement but rather obtained a security interest in the rights of one of the parties to the escrow agreement. *Cf. In re Nichols*, 88 B.R. 871, 876 (Bkrtcy.C.D.Ill. 1988) ("The case at bar is distinguishable from ... *O.P.M. Leasing* in that the creditors in this case were not parties to the escrow agreement."). The escrow account here was established to allow the seller of the Properties, VPA, to manage the Properties using the buyer's funds; it was intended primarily for the benefit of VPA.

The collateral in *O.P.M.* was the $100,000. That money became payable to the creditor upon default by the debtor. In this case, the collateral was the debtor's right to receive funds in the Escrow Account. The creditors here, the Banks, could receive the money, if any, in the Escrow Account only on the occurrence both of a default by the debtor and conditions precedent to the debtor's receiving the funds under the escrow agreement.

Moreover, the escrow account at issue here differs substantially from the account at issue in *O.P.M.* In that case, there was a sum certain in money in the escrow account deposited in a bank. In this case, the Escrow Account was in reality an operating fund and it was possible that all the money would have been depleted from the Escrow Account before the happening of the conditions necessary for any payment to Vienna Park.

The collateral in this case therefore was not "money" as that term is used in section 8.9–305. The Banks do not contend that the collateral could properly be classified as any of the other types of collateral in which a security interest can be perfected by possession under section 8.9–305. Nor do the Banks contend that the security interest is excepted from the filing requirement of section 8.9–302(1)(a) in any manner except through operation of section 8.9–305. Although the district court was likely correct in classifying the collateral as a general intangible, it is enough that the collateral is not among the exceptions to section 8.9–302(1)'s general filing requirement.

 Thus, under Virginia law, in order to perfect its security interest in Vienna Park's right to receive the residue of the Escrow Account the Banks were required to file a financing statement. As they concede that they did not do so, the security interest was unperfected. Thus, under Virginia law, that interest is subordinate to the rights of a person who becomes a lien creditor prior to perfection. Va.Code § 8.9–301(1)(b). As the Bankruptcy Code endows the trustee with the power of a hypothetical lien creditor at the beginning of the bankruptcy case, 11 U.S.C. § 544(a)(1), the district court properly held that the Banks' security interest in the proceeds of the Escrow Account was voidable.

We agree with both the district court and the bankruptcy court that summary judgment on this issue was appropriate and that further discovery on the issue was not warranted. Thus, we affirm the judgment of the district court on this issue.

## CONCLUSION

The rents of the Properties were properly classified as "cash collateral" under sec-

tion 363 of the Bankruptcy Code. Because the Banks had not enforced their right to collect the rents prior to bankruptcy, the automatic stay prevents them from collecting the rents. The Banks' security interest in Vienna Park's right to receive the residue of the Escrow Account was not perfected under Virginia law and thus the district court properly held that the trustee could void that interest.

Affirmed.