**In re SYSTEMS ENGINEERING & ENERGY MANAGEMENT ASSOCIATES, INC., Debtor.**

**SunTrust Bank, Plaintiff,**

**v.**

**Richard W. Hudgins, Trustee, Defendant.**

**Bankruptcy No. 99–41937–S. Adversary No. 01–4004–S.**

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

Feb. 13, 2002.

Systems Engineering & Energy Management Associates, Inc., Hampton, VA, pro se.

Donald C. Schultz, Crenshaw, Ware & Martin, PLC, Norfolk, VA, for Crestar Bank.

John D. McIntyre, Peter G. Zemanian, Willcox & Savage, PC, Norfolk, VA, for Richard W. Hudgins, Trustee.

## MEMORANDUM OPINION AND ORDER

STEPHEN C. ST. JOHN, Bankruptcy Judge.

On July 30, 1999, SunTrust, Kaapland, Inc. and Virginia Stucco Corporation filed an involuntary bankruptcy petition under Chapter 7 of Title 11 of the United States Code against Systems Engineering & Energy Management Associates, Inc. ("SEEMA"), a Commonwealth of Virginia corporation. This Court entered an order for relief on September 15, 1999. On May 18, 2001, SunTrust Bank ("SunTrust"), through its counsel, filed a Complaint for a Declaratory Judgment, alleging it is entitled to the proceeds of any recovery actions by the Chapter 7 Trustee. The Trustee, Richard W. Hudgins ("Trustee"), through counsel, answered the complaint on June 19, 2001 and moved to dismiss. At the pre-trial conference held by this Court on August 8, 2001, the parties, SunTrust and the Trustee, agreed to file cross motions for Summary Judgment. The Court conducted a Summary Judgment hearing on October 22, 2001 ("October 22 Hearing"), which addressed whether SunTrust's lien is valid and whether such lien attaches to the proceeds of the Trustee's recovery actions.

At the October 22 Hearing, SunTrust and the Trustee made certain arguments which raised the question of whether the stipulations of fact made by the parties were sufficient to permit the Court to conclude there were no material factual disputes in this matter. The Court provided SunTrust and the Trustee the option of proceeding to a trial on the merits or to attempt to develop additional factual stipulations in support of their respective mo-

tions for Summary Judgment. SunTrust and the Trustee elected to supplement their factual stipulations. On November 19, 2001, additional factual stipulations were filed with this Court. On November 29 and November 30, 2001, the Trustee and SunTrust, respectively, filed their Supplemental Briefs in support of their motions for Summary Judgment. In December of 2001, the Trustee and SunTrust advised the Court that no additional oral argument of the Motions for Summary Judgment were necessary and the Motions for Summary Judgment were submitted for decision by this Court.

SunTrust asserts that it holds a prepetition security in the property which the Trustee has recovered in this case and that its security interest continues in that property after its recovery by the Trustee. More specifically, SunTrust contends its security interest extends to the monies recovered from the Marshall Space Flight Contract and the equity from the REEMA headquarters building because its lien extends to general intangibles. The Trustee, in contrast, argues SunTrust did not obtain an explicit prepetition lien on any of the sources, which constitute the recovered assets. The recovered assets, the Trustee believes, are not encompassed under the designation of "contract rights" contained in the security documents of SunTrust and, therefore, SunTrust has no valid prepetition lien on any of the assets recovered by the Trustee in this case. The Trustee also asserts even if SunTrust possessed a valid perfected security interest in the general intangibles of SEEMA, that interest does not extend to postpetition recoveries by the Trustee. This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 on such issues.

## FINDINGS OF FACT

The parties have stipulated to all the pertinent facts, and they are listed henceforth. SEEMA was incorporated pursuant to the laws of the Commonwealth of Virginia on September 19, 1980. NationsBank of Virginia ("NationsBank") extended certain loans to SEEMA in 1992, which SunTrust purchased in 1993 and further extended a revolving line of Credit. (Ex. 1.) SEEMA and SunTrust executed a commitment letter on January 16, 1997 that approved a loan of $250,000, SunTrust extended such a loan on February 4, 1997 and secured it by a promissory note. (Ex. 2, 3.) Then on May 30, 1997, SEEMA and SunTrust executed a commitment letter renewing a $500,000 line of credit secured by a promissory note from SEEMA to SunTrust. (Ex. 4, 5.)

Both banks secured their loans through the execution of security agreements. NationsBank and SEEMA executed a security agreement on December 30, 1992, which NationsBank later assigned to SunTrust, thereby creating a security interest in some of SEEMA's property. (Ex. 6.) In conjunction with this agreement, NationsBank recorded a financing statement on December 30, 1992, with the Circuit Court for the City of Hampton, Virginia and filed a financing statement with the State Corporation Commission on January 4, 1993. (Ex. 9, 12.) SunTrust filed a financing statement on November 16, 1993, with the Circuit Court for the City of Hampton, Virginia, assigning the original NationsBank financing statement to itself, and filed another financing statement with the State Corporation Commission on November 24, 1993, similarly assigning NationsBank's interest to itself. (Ex. 10, 13.) SunTrust continued its interest through continuation filings through the present. (Ex. 11, 14.)

SunTrust also executed a security agreement to secure its loans with SEEMA, including the NationsBank loans, on January 29, 1996, which created a security interest in certain parts of SEEMA's property. (Ex. 7.) To further secure its interest, SunTrust and SEEMA executed a Third Security Agreement on February 4, 1997, which created an additional security interest in part of SEEMA's property. (Ex. 8.) Pursuant to the terms of the notes and security agreements, SEEMA has defaulted on its obligations and therefore, SEEMA owes SunTrust $560,287.58 as of May 18, 2001. (Stip. 24.)

In conjunction with the default and the involuntary bankruptcy proceedings, the Trustee, pursuant to his duties, has prosecuted suits against third parties to recover estate assets and assert certain causes of actions. Through settlements of such actions, the Trustee has recovered $388,651.61 as of November 19, 2001. Because the Trustee recovered much of the monies through settlements of complaints alleging a multiplicity of claims against certain third parties, the Trustee is unable to allocate these funds according to particular claims or litigation theories; however, the Trustee can allocate the source of the recovered monies now in his possession as follows:

| | | |
|---|---|---|
| (a) | Cash Surrender Value of Larry Dennis[1] Insurance Policy: | $ 35,668.12 |
| (b) | Net Equity from REEMA Headquarters Building: | $232,383.29 |
| (c) | Residual Net Worth from Wind Up of SEEMA, Alabama, Inc.: | $107,841.39 |
| (d) | Preference Settlements: | $ 12,758.81 |

(Stip. 32) ("Recovered Assets"). With regard to the monies recovered from SEEMA., Alabama, Inc., the Trustee asserts such recoveries, consisting of retained earnings and assets after completion of corporate and financial affairs, are subject to any unresolved claims against SEEMA Alabama, Inc., while SunTrust asserts its

1. He was a SEEMA employee.

lien is superior to any such claims. With such facts already stipulated, the Court must now determine whether SunTrust's lien applies to the Trustee's recoveries.

## CONCLUSIONS OF LAW

### I. Standards of Review

Both SunTrust and the Trustee have moved for Summary Judgment. Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Bankruptcy Rule 7056. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hinkleman v. Shell Oil Co.*, 962 F.2d 372, 375 (4th Cir.1992). As the parties have stipulated and this Court agrees, there is no genuine issue of material fact;. thus, Summary Judgment is an appropriate resolution of this matter.

### II. SUNTRUST'S LIEN APPLIES TO CERTAIN ENUMERATED CATEGORIES

Through November 19, 2001, The Trustee has recovered $388,651.61 for the benefit of the bankruptcy estate, SunTrust asserts a lien over such funds. The Trustee seeks to defeat SunTrust's claim on two bases: (1) SunTrust never had a valid, prepetition lien on any of the Recovered Assets in this case by the Trustee; and (2) even if SunTrust possessed a valid, prepetition lien on the general intangibles of SEEMA, that interest does not extend to any postpetition recoveries by the Trustee. The Court will first consider the question of whether SunTrust possessed a valid, prepetition lien on any of the Recovered Assets.

11 U.S.C. § 552(b) (2001) states that for any security agreement entered into before the commencement of the bankruptcy case, its scope is determined by the agreement and non-bankruptcy law. Furthermore, since both parties assert Virginia law applies to these security agreements, this Court will examine the validity of such interests under the Virginia commercial code. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (holding state law determines the validity of security interest in the property interest of a bankruptcy estate); *American Bankers Ins. Co. of Fla. v. Maness (In re Houska),* 101 F.3d 358, 363 (4th Cir.1996).

In Virginia, the Uniform Commercial Code governs secured transactions through Va.Code Ann. title 8.9–101 through 8.9–507.[2] *Crestar Bank v. Neal (In re Kitchin Equip. Co. of Va., Inc.),* 960 F.2d 1242, 1245 (4th Cir.1992). Under Va. Code § 8.9–203(1)(a) (Michie 1991), a party must possess the collateral or subject it to a signed security agreement in order for a lien to attach. Given that SunTrust did not have possession of the collateral, this Court must examine the security documents to determine the validity and extent of SunTrust's lien.

■ Generally, to perfect a security interest in personal property and fixtures, a party must file a financing statement in order to give notice to third parties. "The financing statement system established in Article 9 and implemented in its Part 4 is a notice system." *Fed. Deposit Ins. Corp. v. Victory Lanes,* 158 B.R. 617, 620 (E.D.Va. 1993). Failure to file a financing state-

ment will leave the creditor's security interest unperfected.

The Trustee's interest will have priority over any lien if such lien is not perfected. *Vienna Park Props. v. United Postal Savings Ass'n (In re Vienna Park Props.),* 976 F.2d 106, 115 (2d Cir.1992) (applying Virginia law). NationsBank filed a financing statement perfecting its interest on December 30, 1992, which SunTrust, as successor in interest to NationsBank, filed an amendment to this financing statement assigning this interest to itself on November 16, 1993, and continued to the present. (Stip. 21; Ex. 11, 14.)

These financing statements filed with the Circuit Court of the City of Hampton, Virginia and with the State Corporation Commission describe the lien as applying to "all Accounts, Furniture, Fixtures, and Equipment now owned or hereafter acquired as further described in attached Schedule 'A' and Exhibit 'A.' " (Ex. 10, 13.) Schedule A lists the collateral as Accounts and defines this term as:

> Each and every account, receivable, contract right, lease, chattel paper, and other rights of the Debtor to the payment of money, of every nature, type and description, whether now owing to the debtor or hereafter arising, and all monies and other proceeds (cash or noncash) . . .

*Id.* Schedule A further asserts a security interest in Equipment and Other Collateral. Exhibit A is more specific in that it lists the collateral as accounts receivable due form the Langley Air Force Base contract, accounts receivable from the Navy Family Housing Contract, and cer-

---

**2.** The prior version of article 9 applies to this proceeding because SunTrust filed its complaint on May 18, 2001. The new article 9 came into effect on July 1, 2001. Va.Code § 8.9A–701 (Michie 2001) (stating "this title takes effect on July 1, 2001"). The statute

further states "this title does not affect an action, case, or proceeding commenced before this title takes effect." Va.Code § 8.9A–702(c) (Michie 2001). Therefore, this Court must examine the prior version of Article 9 to decide the outcome of this matter.

tain listed vehicles or vehicle accessories. *Id.*

■ From this information, this Court must determine whether the financing statement is "sufficiently descriptive so as to reasonably generate further inquiry." *Girard Trust Co. v. Strickler (In re Varney Wood Products)*, 458 F.2d 435, 437 (4th Cir.1972). Any perfected security interest, will only secure the collateral where the financing statement generates such inquiry.[3] *See Mahon v. United States, (In re Mahon)*, 82 B.R. 33, 34 (Bankr.W.D.Va. 1988). To satisfy this standard, the financial statement must describe the collateral by type or item. *In re H.L. Bennett*, 588 F.2d 389 (3d Cir.1978);[4] *Canfield v. Small Bus. Admin. (In re Tebbs Constr. Co., Inc.)*, 39 B.R. 742, 746 (Bankr.E.D.Va. 1984); *Hixon v. Credit Alliance Corp.*, 369 S.E.2d 169, 235 Va. 466 (1988).

SunTrust's financing statement describes the collateral as Accounts, Equipment, and Other Collateral, which are mutually exclusive collateral categories. *Leake v. First Nat'l. Bank of Broadway (In re Shiflett)* 40 B.R. 493, 494 (Bankr.

W.D.Va.1984). Account "means any right to payment for goods sold or leased or for services rendered which is not evidence by an instrument or chattel paper, whether or not it has been earned by performance." Va.Code Ann. § 8.9–106 (Michie 1991). In this Circuit, courts construe the collateral type Account as those items entitling a right to payment, which is consistent with the definition in SunTrust's security agreements, "other rights to the payment of money, of every nature, type and description, whether now owing to the Debtor or hereafter arising and other proceeds (cash or non-cash)." (Ex. 13); *In re Varney Wood Prods.*, 458 F.2d at 437. However, SunTrust utilizes this language to assert its lien over the litigation recoveries by creating a duty to inquire as to any liens on all of the debtor's assets.[5] *E.W.G. Corp. v. TWI, Inc. (In re TWI, Inc.)*, 745 F.2d 52 (4th Cir.1984) (unpublished table decision) (holding "all corporate assets" could not under Va.Code § 8.9–402(1) give rise to a security interest in a tax refund); *First City Bank v. Webb Co. (In re Softalk*

3. The Trustee steps into the shoes of the debtor and only accedes to the debtor's interest in the property. *Angeles Real Estate Co. v. Kerxton (In re Constr. Gen., Inc.)*, 737 F.2d 416 (4th Cir.1984). Such interest clearly only applies to the priority of security interests. It would not place the Trustee in the shoes of the debtor with regard to the creditor debtor relationship where notice to the debtor refers only to the security agreements, while the financing statement grants notice to third parties. *See Whitmore & Arnold, Inc. v. Lucquet*, 353 S.E.2d 764, 233 Va. 106 (1987). Since the Trustee represents the interest of the estate and therefore the interest of all creditors, its position is more analogous to a third party, such as a bona fide purchaser or judgment lien creditor, and thereby requires this Court to examine the notice granted to third parties through the filed financing statement. *Angeles Real Estate Co.*, 737 F.2d at 418; *Mayer v. United States (In re Reasonover)*, 236 B.R. 219 (Bankr.E.D.Va.1999)

4. "In support of this objective [promoting uniformity of UCC law among the various jurisdictions], courts often look to the law of neighboring jurisdictions in interpreting their own code." *In re Varney Wood Prods.*, 458 F.2d at 437 n. 2.

5. SunTrust also asserts this non-traditional language.gives rise to a duty to inquire further than the items specifically listed on the financing statement. Va.Code Ann. 8.9–502 (Michie 1991). As explained earlier, SunTrust's language is consistent with the Uniform Commercial Code's definition of Accounts. *In re Tebbs Constr. Co, Inc.*, 39 B.R. at 747 (holding that courts should construe the Code consistent with its commercial purpose). This language creates a lien on the debtor's contractual right to payment, while only an extremely contorted interpretation of this text would change it into non-traditional language.

*Publishing Co., Inc.)* 64 B.R. 523, 526 n. 5 (9th Cir. BAP 1986), *aff'd* 856 F.2d 1328 (9th Cir.1988) (stating a financing statement's description of collateral is insufficient when it asserts a lien over all assets and describes none).

There is a substantial amount of case law requiring liberal interpretations of collateral descriptions in financing statements. *In re Varney Wood Prods.*, 458 F.2d at 436–37 (holding courts should liberally construe the Code in order to effect its commercial purpose and each description need only create a duty to inquire); *Brushwood v. Citizens Bank of Perry (In re Glasco, Inc.)*, 642 F.2d 793, 795–96 (5th Cir. Unit B Apr.1981). However, in all cases there remains a requirement of a sufficient description as to put third parties on notice of a possible lien on the collateral described, and when a description is insufficient, any lien is limited to the collateral properly described.[6] *Maxl Sales Co. v. Critiques, Inc.*, 796 F.2d 1293, 1299 (10th Cir.1986) (holding a collateral description on a financing statement consisting of "proceeds, accounts receivable and intangibles arising from a certain consignment agreement ..." insufficient to perfect an interest in inventory); *In re H.L. Bennett Co.*, 588 F.2d at 392 (holding a description less specific than collateral categories is an insufficient description on a finance statement); *Healthcorp, Inc. v. Southeastern Emergency Healthcare, P.C. (In re Southeastern Emergency Healthcare, P.C.)*, 85 B.R. 170, 172 (Bankr. N.D.Ga.1988) (holding "all those items of personal property" located on debtor's property, is an insufficient description to cover debtor's accounts receivable); *I.A.*

*Durbin v. Jefferson Nat'l. Bank (In re I.A. Durbin)*, 46 B.R. 595, 599 (Bankr.S.D.Fla. 1985) (holding collateral described as all property rights on certain mortgaged property, insufficient to encompass contract receivables); *Georgia–Pacific Corp. v. Lumber Prods. Co.*, 590 P.2d 661, 663–64 (Okla.1979) (holding the financing statement's description of collateral as "assignment accounts receivable." limits a security agreement's description of collateral as all accounts receivable, thus the collateral only consist of those accounts receivable specifically assigned). Allowing Sun-Trust's statement an interest in Accounts creates a lien as to all of the debtor's assets would vitiate any requirement of giving notice to third parties, and thereby be inconsistent with Virginia's Uniform Commercial Code's policy of notice filings.

In *In re Varney Wood Prods.*, the Fourth Circuit Court of Appeals held that a security interest in accounts receivable entitled a creditor to obtain the proceeds due under a contract because the term of accounts receivable on the filed financing statement created a duty to inquire as to a lien over accounts of the debtor. 458 F.2d at 436–37. Clearly, Accounts encompasses Accounts Receivable, but the Court continued its analysis of this term, thereby establishing that Account follows the contours of any collateral which entitles a right to payment. *Id.* Such a definition contrasts notably with SunTrust's position that Account encompasses the funds at issue, for in the present case these funds arise only from litigation activities and not for any payment due for services performed under a contract nor for any other contractual right of payment.[7]

---

**6.** For example, if SunTrust's position were correct, its lien would cover an action for patent infringement. However, a third party would only look for such a lien if the "general intangibles" category, which specifically lists patents, was marked.

**7.** The litigation recoveries all arose as a result of avoidance actions, which the Trustee set-

Furthermore, such interest is contrary to the plain language of the financing statement. If the parties intended to create a security interest in all assets, there would be no need for different categories on the schedule. Such an intention would make Equipment, General Intangibles, and Livestock, all superfluous categories. *In re Kitchin Equip. Co. of Va., Inc.*, 960 F.2d at 1245–46 (construing all of the language of a termination statement and enforcing the creditor's selection of which box to check, that is by selecting the TERMINATION box and *not* the PARTIAL RELEASE OF COLLATERAL, the creditor is held to its selection); *Miguel v. Horizon Farms (In re Miguel)*, 30 B.R. 896, 898 (Bankr.E.D.Cal.1983) (holding a court must construe all the words on a finance statement's description of collateral, crops is sufficient but when the description includes "now growing," the description of collateral is limited).

This Court may agree there is a lien as to the specific accounts receivable as listed in Exhibit A of SunTrust's financing statement and this Court may further agree SunTrust has a lien as to all of the debtor's rights to payment under its various business contracts, but right to payment through the collateral designation "Account" is not broad enough to encompass the Trustee's litigation recoveries. *In re Shiflett*, 40 B.R. at 494 (holding account and general intangibles categories are mutually exclusive).[8]

The next type of collateral specified on the financing statement is Equipment. Article 9 of the Uniform Commercial Code defines equipment as goods "if they are used or bought for use primarily in business (including farming or a profession) or by a debtor who is a nonprofit organization or a governmental subdivision or agency or if the goods are not included in the definitions of inventory, farm products or consumer goods." Va.Code Ann. § 8.9–109(2) (Michie 1991). The filed financing statement defines "Equipment" as

[a]ll machinery, equipment, tools, furniture, all other tangible personal property of the debtor of every nature, type and description (excluding "household goods" both in the Bank's possession, as that term is defined at 12 C.F.R. § 227.12, as it may be amended from time to time, if the indebtedness is for personal, family or household purposes), and all fixtures together with all additions and accessions thereto and all replacement parts and substitutions therefor, and all similar property now owned or hereafter acquired by the Debtor.

(Ex. 10, 13.) Given both the definition of equipment in the Uniform Commercial Code and the definition contained within the financing statement, a party would only inquire as to a lien on tangible property. *In re Varney Wood Prods.*, 458 F.2d at 437. Whether these litigation recoveries are General Intangibles, encompassed by a lien over Accounts, or some other type of collateral, it is certain that a lien over Equipment, which consists of tangible property, will not encompass these funds.

The financing statement also specifies Exhibit A constitutes the Other Collateral. As discussed previously, Exhibit A of the financing statement lists this collateral as a security interest in accounts receivable from the Langley Air Force Base Saber Contract, accounts receivable from the

---

tled without allocating the monies to a particular avoidance theory. (Stip. 31.)

8. Both parties have asserted these recoveries are general intangibles. (Pl.'s Supp.Br. 7;

Def.'s Br. p. 10.) Yet SunTrust, continues to assert its lien arises through its description of the collateral as encompassed under the Accounts category.

Navy Family Housing Contract, and several vehicles and a trailer. These specifically enumerated items of collateral offer little support for SunTrust's position due to their narrow construction. Since litigation recoveries are not included in this list, this category fails to advance SunTrust's position.

## III. CONCLUSION

SunTrust asserts a lien over the litigation recoveries through its security agreement and financing statement. In order to have a perfected interest in these recoveries, the financing statement, through its collateral description, must give notice to third parties of SunTrust's possible interest. SunTrust's financial statement indicates a possible interest in the debtor's Accounts, Equipment, and Other Collateral. Equipment is limited to tangible property and Other Collateral is limited to a specifically enumerated list of items. The financial statement's description of Accounts would give reasonable notice as to a possible security interest in contractual payments to the debtor, but such right of payment is too narrow to encompass the litigation recoveries. This Court concludes that since the litigation recoveries are not encompassed by any of SunTrust's descriptions of collateral, the Trustee's litigation recoveries are not subject to SunTrust's lien.[9]

---

**9.** Since this Court has determined SunTrust did not possess a valid, prepetition lien on any of the property recovered by the Trustee, it need not address the issue of whether a creditor may have a lien on postpetition recoveries of a trustee. In *Angeles Real Estate Co. v. Kerxton (In re Constr. Gen., Inc.)*, 737 F.2d 416 (4th Cir.1984) (applying Maryland law), the Fourth Circuit Court of Appeals considered whether certain proceeds recovered by a Trustee were subject to the lien of a creditor. There an obligor on a note, which had previously had one half of its proceeds assigned to a creditor, paid the proceeds to the debtor, who utilized these monies to pay another creditor. After the Trustee recovered the monies as a preference, the creditor assignee of the note proceeds asserted a claim for one half of the Trustee's preference recovery. The Trustee stipulated that the debtor used the note proceeds to make the preferential payment. After finding a legal interest in one half of the note's proceeds had passed to the creditor, the Court concluded Maryland law dictated that a specific prior lien is superior to the Trustee's general lien as a judgment creditor and therefore "recovery of the preferences was a recovery of the same funds." *Id.* at 419. *But see Research–Planning, Inc. v. Segal (In re First Capital Mortgage Loan Corp.)*, 917 F.2d 424 (10th Cir.1990) (criticizing the decision in *Angeles Real Estate Co*). Chief Judge Altenberger, in *Barber v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.)*, 178 B.R. 753, 764 (C.D.Ill.1995), summarizes the reasoning of most courts who hold that a creditor cannot claim a lien on Trustee recoveries:

> where a secured creditor has an independent claim against a third party to recover property transferred by a debtor to the third party, that claim cannot be cut off by a trustee's exercise of the Code's avoiding powers to recover the property and will have priority over a trustee's claim to the property arising out of the exercise of the avoiding powers. However, where the secured creditor has no independent claim to the property which is subject to the trustee's avoiding powers and could not recover it from the third party, the secured creditor cannot improve its position because of the trustee's exercise of the avoiding powers and assert an additional claim by claiming it from the trustee who recovered it from the third party by exercising the avoiding powers.

*Id.* Thus, if the bankruptcy filing creates the cause of action, such as a preference action, then the lien would not apply. *See In re Bev of Va. Inc.*, 237 B.R. 311, 316 (Bankr.E.D.Va.1998) (implying the Trustee may recover for the benefit of the estate prepetition transfers of fully secured property); *Hennessy v. Kennedy (In re Sun Island Foods)*, 125 B.R. 615 (Bankr.D.Hawai'i 1991); *Mellon Bank (East), N.A. v. Glick (In re Integrated Testing Prods. Corp.)*, 69 B.R. 901 (D.N.J.1987); *But see In re Ellingsen MacLean Oil Co.*, 98 B.R. 284, 289–91 (Bankr.W.D.Mich.1989) (holding creditors postpetition liens applied to prefer-

IT IS SO ORDERED

This Court further ORDERS the Clerk to mail copies of this Order to Peter G. Zemanian, Willcox & Savage, P.C., 1800 Bank of America Center, Norfolk Virginia 23510-2197 and Donald C. Schultz, Crenshaw, Ware & Martin, P.L.C., 1200 Bank of America Center, Norfolk, Virginia 23510.

ential transfer recovery proceeds); *In re Mid–Atlantic Piping Prods. of Charlotte, Inc.,* 24 B.R. 314 (Bankr.W.D.N.C.1982). However,

the factual situation in this matter precludes this Court from deciding this issue.